**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| KENNETH DUKES, MARK A. GALE, CHRISTINE CHAVIS, AND DAVID R. FLY, individually, and as representatives of a Class of Participants and Beneficiaries of the AmerisourceBergen Corporation Employee Investment Plan,<br><br>       Plaintiffs,<br><br>       v.<br><br>AMERISOURCEBERGEN CORPORATION, et al.<br><br>       Defendants | Case No. 3:23-CV-313-DJH-CHL |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................. 1

STANDARD OF REVIEW ................................................................................... 4

ARGUMENT ........................................................................................................ 6

I.     PLAINTIFF HAS ALLEGED SUFFICIENT FACTS FROM WHICH
THIS COURT MAY PLAUSIBLY INFER THAT DEFENDANTS PAID
RKA FEES THAT WERE EXCESSIVE RELATIVE TO THE SERVICES
RENDERED .............................................................................................. 6

II.    PLAINTIFFS HAVE STANDING AND HAVE ALLEGED SUFFICIENT
FACTS FROM WHICH THIS COURT MAY PLAUSIBLY INFER THAT
DEFENDANTS PAID STABLE VALUE FUND FEES THAT WERE
EXCESSIVE COMPARED TO MEANINGFUL BENCHMARKS ............. 12

       A.    Plaintiffs Have Standing to Bring Their Stable Value Fund Claims
in This Case ..................................................................................... 12

       B.    Plaintiffs Have Plausibly Pled That Defendants Breached Their
Fiduciary Prudence By Selecting and Maintaining the Excessively
Expenses FMIP Fund in the Plan ..................................................... 15

III.    THE COURT SHOULD NOT DECIDE THIS MOTION BASED ON
DEFENDANTS' COUNTER-NARRATIVE OF FACTS ......................... 19

IV.    PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF DUTY TO
MONITOR ............................................................................................... 23

CONCLUSION .................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**

*Amini v. Oberlin Coll.*,
    259 F.3d 493 (6th Cir. 2001) ........................................................................................ 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................... 1, 5

*B & H Med., L.L.C. v. ABP Admin., Inc.*,
    526 F.3d 257 (6th Cir. 2008) ......................................................................................... 2

*Beck v. PACE Int'l Union*,
    551 U.S. 96 (2007)....................................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................ 1, 4, 5

*Boley v. Univ. Health Servs., Inc.*,
    2020 WL 6381395 (E.D. Pa. Oct. 30, 2020)................................................................. 14

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ....................................................................................... 15

*Cassell v. Vanderbilt Univ.*,
    285 F. Supp. 3d 1056 (M.D. Tenn. 2018).................................................................... 11

*Cates v. Trs. of Columbia Univ.*,
    2021 WL 964417 (S.D.N.Y. Mar. 15, 2021) ................................................................ 14

*Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ......................................................................................... 5

*Davis v. Magna Int'l of Am., Inc.*,
    2021 WL 1212579 (E.D. Mich. Mar. 31, 2021) ................................................. 11, 14, 15

*Disselkamp v. Norton Healthcare, Inc.*,
    2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) ................................................. 1, 11, 17, 18

*E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church and School*,
    597 F.3d 769 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171 (2012).................... 5

*England v. DENSO Int'l Am. Inc.*,
    2023 WL 4851878 (E.D. Mich. July 28, 2023) .......................................................... 6, 7

*Fallick v. Nationwide Mut. Ins. Co.*,
    162 F.3d 410 (6th Cir.1998) ........................................................................................ 15

*Forman v. TriHealth, Inc.*,
    40 F.4th 443 (6th Cir. 2022) ........................................................... passim

*George v. Kraft Foods Glob., Inc.*,
    641 F.3d 786 (7th Cir. 2011) ................................................................. 11

*Glick v. ThedaCare Inc. et al.*,
    Case No. 20-CV-1236-WCG- SCD (E.D. Wis. July 20, 2023)........................ 7

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)............................................................................ 14

*Hughes v. Northwestern University*,
    63 F.4th 615 (7th Cir. 2023) ........................................................... passim

*In re Xerox Corp. ERISA Litig.*,
    483 F. Supp. 2d 206 (D. Conn. 2007) ..................................................... 23

*Jackson v. City of Columbus*,
    194 F.3d 737 (6th Cir. 1999) .................................................................. 1

*Johnson v. Parker-Hannifin, Corp.*,
    2023 WL 8374525 (N.D. Ohio Dec. 4, 2023) ............................................ 17

*Kurtz v. Vail Corp.*,
    2021 WL 50878 (D. Colo. Jan. 6, 2021)................................................... 14

*LaRue v. DeWolff, Boberg & Assocs.*,
    552 U.S. 248 (2008)............................................................................ 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................ 13

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)............................................................................ 14

*Mateya v. Cook Grp. Inc.*,
    2023 WL 4608536 (S.D. Ind. June 16, 2023) ............................................ 6

*Matousek v. MidAm. Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ................................................................. 11

*Mazza v. Pactiv Evergreen Services Inc.*,
    2023 WL 3558156 (N.D. Ill. May 28, 2023)...................................... 7, 10, 23

*McCool v. AHS Mgmt. Co., Inc.*,
    2021 WL 826756 (M.D. Tenn. March 4, 2021)......................................... 14

*McDonald v. Kroger Co.*,
    2020 WL 9351270 (W.D. Ky. Sept. 30, 2020) ............................................ 1

*McDonald v. Lab'y Corp. of Am. Holdings*,
    2023 WL 4850693 (M.D.N.C. July 28, 2023) ................................................... 21

*McGowan v. Barnabas Health, Inc.*,
    2021 WL 1399870 (D.N.J. Apr. 13, 2021) ....................................................... 14

*McNeilly v. Spectrum Health System*,
    No. 20-cv-870 (W.D. Mich. July 16, 2021) ...................................................... 14

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ...................................................... 16, 18, 19, 20

*Miller v. Packaging Corp. of Am.*,
    2023 WL 2705818 (W.D. Mich. Mar. 30, 2023) ............................................ 6, 7

*Moitoso v. FMR, LLC*,
    451 F. Supp. 3d 189 (D. Mass. 2020) ......................................................... 21, 22

*Moore v. Humana, Inc.*,
    2022 WL 20766503 (W.D. Ky. Mar. 31, 2022),
    *reconsideration denied*, 2022 WL 20766504 (W.D. Ky. Dec. 2, 2022)................. 1, 9, 11

*Nohara et al. v. Prevea Clinic Inc. et al.*,
    Case No. 20-CV-1079-WCG-SCD (E.D. Wis. July 21, 2023)............................ 7

*Ohio Nat'l Life Ins. Co. v. United States*,
    922 F.2d 320 (6th Cir. 1990) ........................................................................ 5, 6

*Parmer v. Land O'Lakes, Inc.*,
    2021 WL 464382 (D. Minn. Feb. 9, 2021) ..................................................... 14

*Peck v. Munson Healthcare*,
    2022 WL 17260807 (W.D. Mich. Nov. 6, 2022)....................................... 8, 9, 22

*Probst v. Eli Lilly & Co.*,
    2023 WL 1782611 (S.D. Ind. Feb. 3, 2023) .................................................... 6

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
    78 F.3d 1125 (6th Cir. 1996) .......................................................................... 5

*Rogers v. Baxter Int'l Inc.*,
    710 F. Supp. 2d 722 (N.D. Ill. 2010) ............................................................ 23

*Seibert v. Nokia of Am. Corp.*,
    2023 WL 5035026 (D.N.J. Aug. 8, 2023) .................................................. 19, 21

*Sigetich v. The Kroger Co.*,
    2023 WL 2431667 (S.D. Ohio Mar. 9, 2023)................................................ 6, 7

*Silva v. Evonik Corp.*,
    2020 WL 12574912 (D.N.J. Dec. 30, 2020) ...................................................... 19

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) .................................................................... passim

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ........................................................................ 5

*Thole v. U.S. Bank*,
    140 S. Ct. 1615 (2020) ............................................................................ 13, 14

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015) ................................................................................. 6, 16

*Tolomeo v. R.R. Donnelley & Sons, Inc.*,
    2023 WL 345530 (N.D. Ill. May 15, 2023) ........................................... 7, 10, 21

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) .................................................................... 11

*Zimmerman v. CitiMortgage, Inc.*,
    2012 WL 1067912 (W.D. Ky. Mar. 29, 2012) ................................................ 1

**Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA"),
    29 U.S.C. § 1001, et seq. ...................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................... 4, 5, 12

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 4, 5

Fed. R. Civ. P. 8(a) ................................................................................... 1

Fed. R. Civ. P. 8(a)(2) ................................................................................ 4

**INTRODUCTION**

Rule 12(b)(6), even post-*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), only requires that Plaintiffs' claims give rise to a plausible conclusion that Defendants breached their fiduciaries duty under ERISA and Plaintiffs may recover for those violations. Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8(a). Defendants ask that the Court go farther and eliminate every contrary explanation, even relying on numerous materials outside the pleadings.[1] Neither the Sixth Circuit, nor this very court in *Moore v. Humana, Inc.*, 2022 WL 20766503, at *4 (W.D. Ky. Mar. 31, 2022), *reconsideration denied*, 2022 WL 20766504 (W.D. Ky. Dec. 2, 2022), or *Disselkamp v. Norton Healthcare, Inc.*, 2019 WL 3536038, at *9 (W.D. Ky. Aug. 2, 2019), impose that heightened burden on Plaintiffs at the initial pleading stage in these types of ERISA cases. Instead, because alternative inferences are in equipoise with regard to the presence of excessive recordkeeping and administrative ("RKA") and stable value fund fees in the AmerisourceBergen Plan, Plaintiffs should prevail on Defendants' motion to dismiss. *See Hughes v. Northwestern University*, 63 F.4th 615, 629-30 (7th Cir. 2023) ("*Hughes II*") (citing *Forman v. TriHealth, Inc.,* 40 F.4th 443, 447 (6th Cir. 2022)).

---

[1] Defendants wrongly attempt, in their Memorandum, to add materials outside of the pleadings, including Exhibit 2 – FMIP Fact Sheet (September 30, 2023) (ECF No. 19-2); Exhibit 3 – Construction Rules for the Morningstar US CIT Stable Values Indexes (ECF No. 19-3); Exhibit 4 – MSVI Holdings (Sept. 30, 2023) (ECF No. 19-4); Exhibit 5 – Putnam Stable Value Fund Fact Sheet (Q2 2023) (ECF No. 19-5); and Exhibit 6 – T. Rowe Price Stable Value Fund (Sept. 30, 2023) (ECF No. 19-6). Although there are some exceptions to the general rule to not considering facts outside the pleadings, including public records, matters of judicial notice, and letter decisions of government agencies, none of those exceptions apply here. *See McDonald v. Kroger Co.*, 2020 WL 9351270, at *7 (W.D. Ky. Sept. 30, 2020) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). The Plaintiffs thus urge the Court to reject Defendants' premature attempt to introduce additional unauthenticated facts into the record at this stage of the litigation. *See Zimmerman v. CitiMortgage, Inc.*, 2012 WL 1067912, at *7 (W.D. Ky. Mar. 29, 2012).

Moreover, and contrary to Defendants' assertions, ECF No. 19 at PageID #402-411, Plaintiffs have alleged in the Amended Complaint[2] sufficient facts from which this Court may plausibly infer that Defendants paid total RKA fees that were excessive relative to the services rendered. *See Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164 (6th Cir. 2022) ("To allege a breach of fiduciary duty claim based on imprudent recordkeeping fees, a plaintiff must plead facts that would allow a plausible inference that the recordkeeping fees were excessive relative to the services rendered."). However, unlike the plaintiffs in *CommonSpirit*, Plaintiffs here do not "compare[ ] the cost of recordkeeping services per plan participant for her plan to the industry average." *Id.* at 1169. Plaintiffs allege that for a plan the mammoth size of the AmerisourceBergen Plan, "[a]ny differences in these Bundled RKA services are immaterial to the price quoted by recordkeepers for such services," ECF No. 16, ¶ 60 (PageID #338-339), and "[b]ecause RKA services are commoditized, recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for mega plans like the [AmerisourceBergen] Plan." *Id.*, ¶ 63 (Page ID #339). In other words, Plaintiffs maintain that that recordkeeping services are fungible or commoditized and, in this manner, plead that the AmerisourceBergen Plan RKA fees were excessive relative to the recordkeeping services rendered. Thus, Defendants are simply wrong that Plaintiff has not provided these necessary allegations. ECF No. 19 at PageID #395.

---

[2] Defendants seek to make adverse inferences based on differences between the initial complaint and the Amended Complaint. *See, e.g.*, ECF No. 19 at 7-9 (PageID #387-389). Plaintiffs, however, in their Amended Complaint added additional non-conclusory allegations regarding plan comparators to make the RKA claims clearer and to add the stable value fund excessive fee claims. Having done so, the initial Complaint has been superseded and Defendants cannot prevail on their Motion to Dismiss based on these allegations in the Amended Complaint. *See B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008) (holding a prior "complaint is a nullity, because an amended complaint supersedes all prior complaints.").

Defendants' Memorandum fundamentally fails to understand that Sixth Circuit cases, including *CommonSpirit*, 37 F.4th at 1164, and *TriHealth, Inc.*, 40 F.4th at 447, are now in lock-step with the Seventh Circuit when it comes to motion to dismiss pleading standards in ERISA breach of fiduciary duty cases. *See Hughes v. Northwestern University*, 63 F.4th 615, 632 (7th Cir. 2023) ("*Hughes II*") ("Because plaintiffs allege that recordkeeping services are fungible and that the market for them is highly competitive, *unlike the plaintiffs in CommonSpirit*, plaintiffs plead that the fees were excessive relative to the recordkeeping services rendered.") (citing *CommonSpirit*, 37 F.4th at 1169) (emphasis added). Given that the Seventh Circuit has found these allegations involving the commoditization and fungibility of recordkeeping fees *not* to be conclusory, the Court should do the same here.

Plaintiffs also allege "a breach of fiduciary duty by Defendant Benefits Committee for imprudently selecting stable value funds with excessive fees during the Class Period. More specifically, both the Morningstar stable value fund index and a specific, alternative stable value fund, the T. Rowe Price Stable Value Fund N, establish that meaningful benchmarks were paying substantially less for their stable value fund products." ECF No. 16, ¶ 7 (PageID #330). Just as with RKA fees, Plaintiffs need to "give the kind of context that could move their claims from possibility to plausibility by alleging that the fees were excessive relative to the services rendered and allege other facts concerning factors relevant to determining whether a fee is excessive under the circumstances." *CommonSpirit Health*, 37 F.4th at 1169. Here, Plaintiffs allege the necessary context to show that the Plan's Fidelity Managed Income Portfolio II ("FMIP") stable value fund[3]

---

[3] Defendants also challenge Plaintiffs' stable value fund claim based on standing. Declaration of Kimberly A. Kirkpatrick, ECF No. 19-13, ¶ 2 (PageID #586). Defendants argue something untoward with the fact that Plaintiff Gale recently invested in the FMIP Fund on October 5, 2023. *Id.*, ¶ 5 (PageID #587). It is unclear both why Plaintiff Gale should have been unable to invest in the FMIP Fund when he did and why Plaintiffs do not now have standing to challenge the excessive fees associated with FMIP Fund. As discussed further below, because Plaintiff Gale is legitimately invested in the FMIP fund, ECF No. 16, ¶ 36 (PageID #334), and has been harmed by the Fund's

provided the exact same type of stable value investment characteristics and investment objectives as funds on both the Morningstar stable value index and the T. Rowe Price Stable Value N Fund, and yet imprudently charged excessive fees for that type of investment product. ECF No. 16, ¶¶ 25, 162-179 (PageID #331, 359-363). Plaintiffs also make clear that such comparisons are not done in hindsight, but with the focus being on the Plan fiduciary's real-time decision-making process. *Id.*, ¶ 20 (PageID #332) (citing *TriHealth*, 40 F.4th at 448). In short, Plaintiffs' stable value excessive fee claims also state a claim because Plaintiffs have provided a sound basis of comparison based on an index and a materially similar stable value fund, establishing a plausible inference that the Defendant Benefit Committee paid an unreasonable amount for the FMIP stable value fund. *Id.*, ¶¶ 25, 176-179 (PageID #331, 362-363).

In all, the Court should deny in its entirety Defendants' motion to dismiss the Amended Complaint, because Plaintiffs have sufficiently stated excessive RKA and stable value fund fee claims, along with derivative duty to monitor claims.

## **STANDARD OF REVIEW**

Defendants seek dismissal under both Rule 12(b)(6) and 12(b)(1). With regard to Rule 12(b)(6), a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face." *Id.* at 570. "A claim is

---

excessive fees, he has standing to challenge that Fund as a representative for other participants who are also invested in that stable value fund.

plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

It is not the Court's role to decide between competing, plausible explanations for Defendants' conduct. *See TriHealth*, 40 F.4th at 450 ("In the absence of further development of the facts, we have no basis for crediting one set of reasonable inferences over the other. Because either assessment is plausible, the Rules of Civil Procedure entitle [the three employees] to pursue [their imprudence] claim (at least with respect to this theory) to the next stage."); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[I]t is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.").

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *See E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church and School*, 597 F.3d 769, 776 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171 (2012). A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, the allegations in the complaint are not afforded a

presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists. *Id.*

## ARGUMENT

The Employee Retirement Income Security Act of 1974 ("ERISA") establishes standards of conduct, protecting employees from employers' mismanagement of retirement plans. *See TriHealth*, 40 F.4th at 447-448. Under ERISA, plan administrators must discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "Derived from the law of trusts, the [ERISA] duty of prudence requires plan administrators to select initial investment options with care, to monitor plan investments, and to remove imprudent ones." *TriHealth*, 40 F.4th at 448 (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 528-529 (2015)). Upon a breach of a fiduciary duty, ERISA provides a private right of action. *See* 29 U.S.C. § 1132(a)(2).

## I.     PLAINTIFF HAS ALLEGED SUFFICIENT FACTS FROM WHICH THIS COURT MAY PLAUSIBLY INFER THAT DEFENDANTS PAID RKA FEES THAT WERE EXCESSIVE RELATIVE TO THE SERVICES RENDERED

Defendants attempt to cite to a number of cases for the proposition that the Sixth Circuit has not accepted Plaintiffs' RKA fungibility and commoditization arguments, ECF No. 19 at PageID # 405-406, but all those cases were either decided *before* more recent case law that finds that such allegations are not conclusory (*Sigetich v. The Kroger Co.*, 2023 WL 2431667 (S.D. Ohio Mar. 9, 2023); *Probst v. Eli Lilly & Co.*, 2023 WL 1782611 (S.D. Ind. Feb. 3, 2023)); or did not take such case law into consideration (*England v. DENSO Int'l Am. Inc.*, 2023 WL 4851878 (E.D. Mich. July 28, 2023); *Mateya v. Cook Grp. Inc.*, 2023 WL 4608536 (S.D. Ind. June 16, 2023); *Miller v. Packaging Corp. of Am.*, 2023 WL 2705818 (W.D. Mich. Mar. 30, 2023)).

Indeed, consideration by the Court of the Seventh Circuit case of *Hughes II* decided in March 2023, or the decisions subsequently decided under *Hughes II*, all of which in turn rely substantially on Sixth Circuit case law, support Plaintiffs' excessive RKA allegations in this case. *See, e.g., Nohara et al. v. Prevea Clinic Inc. et al.*, Case No. 20-CV-1079-WCG-SCD, *Magistrate Report and Recommendation*, Dkt. 96 (E.D. Wis. July 21, 2023); *Glick v. ThedaCare Inc. et al.*, Case No. 20-CV-1236-WCG- SCD, *Magistrate Report and Recommendation*, Dkt. 72 (E.D. Wis. July 20, 2023); *Mazza v. Pactiv Evergreen Services Inc.*, 2023 WL 3558156 (N.D. Ill. May 28, 2023); and *Tolomeo v. R.R. Donnelley & Sons, Inc.*, 2023 WL 345530 (N.D. Ill. May 15, 2023).[4]

In *Hughes II*, the Seventh Court adopted a materially similar pleading standard to the Sixth Circuit standard in *TriHealth*, 40 F.4th at 447. In this vein, the Seventh Circuit observed that, "[o]ther circuits are in accord that every possible alternative explanation for an ERISA fiduciary's conduct need not be ruled out at the pleadings stage." *See Hughes II*, 63 F.4th at 629 (citing *TriHealth*, 40 F.4th at 452-53) ("The theory merely provides a competing inference for why *TriHealth* offered retail-class funds," but "the facts of another complaint might suggest an alternative explanation that renders implausible an inference of imprudence."). So, "[w]here alternative inferences are in equipoise – that is, where they are all reasonable based on the facts – the plaintiff is to prevail on a motion to dismiss." *Id.* at 629-30 (citing *TriHealth*, 40 F.4th at 450) ("Equally reasonable inferences . . . could exonerate TriHealth . . . [b]ut at the pleading stage, it is too early to make these judgment calls."). Defendants are therefore incorrect if they were to

---

[4] None of the three Sixth Circuit district court cases cited by Defendants, ECF No. 19 at PageID #405, engaged with, or discussed in any manner, the reasoning of *Hughes II*. *See England v. DENSO Int'l Am., Inc.*, 2023 WL 4851878 (E.D. Mich. July 28, 2023), *under reconsideration*, Case No. 2:22-cv-11129-MAG-APP, ECF No. 43 at PageID #892 (Aug. 30, 2023); *Miller v. Packaging Corp. of Am., Inc.*, 2023 WL 2705818 (W.D. Mich. March 30, 2023); *Sigetich v. The Kroger Co.*, 2023 WL 2431667 (S.D. Ohio March 9, 2023). *Sigetich*, of course, did not discuss *Hughes II* because it was decided before that case.

maintain that the Seventh Circuit requires something less than the Sixth Circuit does in *TriHealth* and *CommonSpirit*, as far as applying a "context-specific" analysis to allegations of fiduciary imprudence and the pleading standard in general. *See Hughes II*, 63 F.4th at 630 ("The discretion accorded to an ERISA fiduciary 'will necessarily be *context specific*.'") (emphasis added). Additionally, the Sixth Circuit is in accord with the Seventh Circuit "that every possible alternative explanation for an ERISA fiduciary's conduct need not be ruled out at the pleadings stage." *Id.* at 629 (citing *TriHealth*, 40 F.4th at 452-53).

Nevertheless, Defendants argue that Plaintiffs only offer conclusory assertions that recordkeeping services are fungible and that these conclusory allegations fail to state a claim. ECF No. 19 at PageID #408-409. However, just as in the recent *Peck* case from this Circuit, the Court should "disagree[ ] with [Defendants'] analysis." *Peck v. Munson Healthcare*, 2022 WL 17260807, at *6 (W.D. Mich. Nov. 6, 2022). This case is not like *CommonSpirit* in which the Sixth Circuit affirmed the dismissal of the plaintiff's imprudent recordkeeping fees claim because she failed to compare sufficiently similar plans. *CommonSpirit*, 37 F.4th at 1169. In this case, Plaintiffs allege that they compared the recordkeeping fees of the Plan to "the annual Total RKA fees paid by other comparable plans of similar size, receiving a materially similar level and quality of Total RKA services, in 2018." (ECF No. 16, ¶ 103 (PageID #347)).[5]  Not only do Plaintiffs further provide a chart comparing the similar plans' number of participants, assets, and recordkeeping

---

[5] Defendants are also incorrect that Plaintiffs are comparing *only* average RKA fees from the AmerisourceBergen Plan to a single year with the comparator plans. ECF No. 19 at PageID #409-410. Not only do Plaintiffs do a 2018 single year comparison between the AmerisourceBergen Plan and the comparable plans, which shows a comparison between $59 per participant for AmerisourceBergen RKA fees and $28 for the comparable plans' RKA fees, ECF No. 16, ¶105 (PageID #348), but they also compare the average RKA fee for the AmerisourceBergen Plan from 2017-2022 ($60) with the comparator plans ($28), which is only $1 *more than* 2018 alone. *Id.*, ¶¶ 107-108 (PageID #348). This use of the average RKA fees provides AmerisourceBergen an almost identical comparison with 2018 with regard to RKA fees and establishes that AmerisourceBergen's RKA fees remained very stable and excessive during the Class Period.

fees, (*id.*), but "[t]o ensure meaningful and apples-to-apples comparisons, Plaintiffs used the same methodology to compare the Total RKA fee rate paid by the Plan with the Total RKA Fee rate paid by other similarly situated and meaningfully comparable plans" and provides substantial detail of the various fees paid by comparator plans. *Id.*, ¶ 117 (PageID #350); *see also id.*, ¶¶ 118-137 (PageID #350-355).

If the allegations in *Peck* were sufficient to state a claim, *Peck*, 2022 WL 17260807, at *6 ("In the Court's judgment, Plaintiff has compared sufficiently similar plans for the purpose of stating a claim under ERISA."), then the even more comprehensive and detailed allegations in this case should more than suffice because "[i]f Plaintiff's allegations are true, they could show that [Defendants] acted as an imprudent fiduciary in failing to monitor the Plan's recordkeeping fees and investigate whether it would have been beneficial to contract with an alternative recordkeeper." *Id.* (citing *Moore v. Humana, Inc.*, No. 3:21-cv-323-RGJ (W.D. Ky. Mar. 21, 2022)). Furthermore, because Plaintiffs have stated a plausible claim for breach of the fiduciary duty of prudence, they are also entitled to pursue their failure to monitor claim based on excessive RKA fees.

So, the Sixth Circuit, just like the Seventh Circuit, requires more than conclusory statements that all recordkeepers do the same thing. ECF No. 19 at PageID #411. In this regard, Defendants believe that it is implausible that all recordkeepers provide the exact same services or, at least, all select the same services. *Id.* Maybe, but that is not what Plaintiffs assert. Rather, the Amended Complaint alleges that any differences in RKA services selected by a plan have a negligible effect on the fees charged. ECF No. 16, ¶ 60 (PageID #338). Furthermore, Plaintiffs' allegations are supported by a number of context-sensitive paragraphs, which must be taken as true for purposes of a motion to dismiss. *Id.*, ¶¶ 50-51, 58-65, 67, 69-70, 73, 99, 102-114, 117-138,

142, 145 (PageID #336, 338-339, 340-341, 346-355, 356). There is nothing inconsistent with those allegations and the context-sensitive pleading standards of *CommonSpirit*, 37 F.4th at 1169.

Because Plaintiffs have alleged that RKA services are fungible and the market for them is highly competitive, *Id.*, ¶¶ 64, 74, 104 (PageID #339, 341, 347), under *CommonSpirit*, Plaintiffs have met their burden to show that the RKA fees in the AmerisourceBergen Plan were excessive relative to the recordkeeping services rendered. *See CommonSpirit* 37 F.4th at 1169; *accord Tolomeo*, 2023 WL 345530, at *4 ("Defendants argue that the evolving case law requires dismissal of Plaintiffs' duty of prudence claim because the complaint fails to allege plausible facts that the alleged comparator plans received the same quality or level of services as the Plan. This ignores the lesson of *Hughes II*. Plaintiffs allege the fungible nature of RK&A fees – that the Plan received a standard bundled RK&A services with 'nearly identical level and quality to other recordkeepers who service other mega plans.'"); *Mazza*, 2023 WL 3558156, at *3 ("Mazza's amended complaint include[d] allegations that recordkeepers for mega retirement plans like [defendant]'s all provide the same level and quality of services with insignificant variation in price, suggesting that the Plan's RKA fees were excessive compared to the services the Plan received based on comparisons to other plans using recordkeepers that provided comparable services for less. Following *Hughes II*, these allegations suffice to allege a breach of the duty of prudence."). Put differently, because alternative inferences are in equipoise with regard to the presence of excessive RKA fees in the AmerisourceBergen Plan, Plaintiffs have plausibly alleged that the RKA services the Plan received "are equivalent to those provided" to Plaintiffs' alleged comparator plans. *See CommonSpirit*, 37 F.4th at 1169 (quoting *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x

10

31, 33 (2d Cir. 2009)); *see also Hughes II*, 63 F.4th at 629-30 (citing *TriHealth*, 40 F.4th at 450) (same); *Matousek v. MidAm. Energy Co.*, 51 F.4th 274, 279-80 (8th Cir. 2022) (same).[6]

Given the foregoing, Plaintiffs have identified sufficient benchmarks against which to compare the AmerisourceBergen Plan. Additionally, Plaintiffs' comparisons, in combination with the commoditization arguments concerning the RKA fees paid by the AmerisourceBergen Plan and comparator plan, sufficiently allege a claim that Defendants breached their duty of prudence by not investigating and negotiating the recordkeeping fee arrangement and, thereby, paid excessive RKA fees. *Accord Moore v. Humana, Inc.*, 2022 WL 20766503, at *4 (W.D. Ky. Mar. 31, 2022), *reconsideration denied*, 2022 WL 20766504 (W.D. Ky. Dec. 2, 2022) (denying motion to dismiss where plaintiffs, like here, included a chart comparing similarly situated plans, including a comparison of number of participants, amount of assets, and recordkeeping fees paid) (citing *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018) ("[W]hether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss"); *Davis v. Magna Int'l of Am., Inc.*, 2021 WL 1212579, at *11 (E.D. Mich. Mar. 31, 2021) ("Plaintiffs have made sufficient allegations related to reviewing, monitoring and ensuring that the recordkeepers 'were being paid reasonable and not excessive fees' . . . [that] dismissal would be inappropriate")).

For all these reasons, the Court should deny Defendants' motion to dismiss with regard to Plaintiffs' excessive RKA fee claims. *See Disselkamp*, 2019 WL 3536038, at *10 ("Plaintiffs

---

[6] Additionally, Plaintiffs alleged with regard to RKA fees that Defendants "should have reduced its fees by soliciting bids from competing providers [and] negotiat[ed] with existing record-keepers for fee reductions." *Compare Hughes II*, 63 F.4th at 631, *with* ECF No. 16, ¶ 149 (PageID #357). "Failure to engage in a competitive bidding process with respect to plan administrative fees may in some circumstances violate a fiduciary's duty of prudence." *See Disselkamp*, 2019 WL 3536038, at *9 (citing *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 799 (7th Cir. 2011)).

11

allege that the average per participant fee during the relevant period was around $50, whereas the per participant fee for the Norton Plan was around $70. This is sufficient to survive a motion to dismiss.").

## II. PLAINTIFFS HAVE STANDING AND HAVE ALLEGED SUFFICIENT FACTS FROM WHICH THIS COURT MAY PLAUSIBLY INFER THAT DEFENDANTS PAID STABLE VALUE FUND FEES THAT WERE EXCESSIVE COMPARED TO MEANINGFUL BENCHMARKS

Defendants challenge Plaintiffs' excessive stable value fund fee claims both on standing grounds and on plausibility grounds. Each will be considered in turn and shown to be without merit.

### A.    Plaintiffs Have Standing to Bring Their Stable Value Fund Claims in This Case

Defendants argue that "the Court should dismiss Count II under Rule 12(b)(1), because Plaintiffs lack constitutional standing to pursue their claim regarding the FMIP," ECF No. 19 at PageID #392-393, and that, "Plaintiffs lack Article III standing to assert a claim challenging the FMIP because they suffered no injury related to the fund." *Id.* at PageID #393. Defendants' standing argument lacks any merit because Plaintiff Gale has been invested in the FMIP fund for over two months now, he suffered harm now, not in the future, based on the excessive fees charged by that Fund like many other Plan participants, and Plaintiffs' claims are not limited to 2022 but go through the date of judgment. ECF No. 16 ¶¶ 17, 34-36, 43-44 (PageID #332, 334, 335). Moreover, Defendants' accusation that Plaintiff Gale invested the FMIP claim "to manufacture" a claim, ECF No. 19 at PageID #388, is pure and rank speculation. Plaintiff Gale, as a former employee and current participant in the Plan, has the ability, for whatever reason, to change his investments in the Plan, and Defendants cite no law that places a blackout period on

Plaintiff Gale during the course of litigation.[7] Finally, even if Plaintiff Gale had decided not to invest in the FMIP Fund when he did, the law is also clear that "[h]aving established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries involving the underperformance of stable value funds." ECF No. 16, ¶ 44 (PageID #335).

The "irreducible constitutional minimum of standing" requires a showing of "injury in fact" to the plaintiff that is "fairly traceable to the challenged action of the defendant," and "likely [to] be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Injury in fact" is an invasion of a legally cognizable right. Defendants' standing argument relies mostly on *Thole v. U.S. Bank*, 140 S. Ct. 1615 (2020). In *Thole*, the Supreme Court found that two retirees did not have standing to challenge the decisions made by the fiduciaries of their employer's retirement plan. *Id.* at 1619. But in doing so, the Court noted that it was of "decisive importance" that the plan at issue was a defined-benefit plan, not a defined-contribution plan like a 401(k) (or a 403(b), like in this case). *Id.* at 1618. Significantly, *Thole* applies solely to the unique circumstances presented by defined benefit plans:

> In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions. By contrast, in a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries'

---

[7] Indeed, the one cite that the Defendants do provide is way off point and, if anything, provides support for Plaintiff Gale's decision to invest in the FMIP Fund in the regular course of his daily activity. In *Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017), the court considered whether "[a] plaintiff has standing to challenge a religious display where his stigmatic injury results from a personal[ ] confront[ation] with the display." *Id.* at 353. In discussing stigmatic injuries, the court observed that "[t]he personal confrontation must also occur in the course of a plaintiff's regular activities; it cannot be manufactured for the purpose of litigation." *Id.* at 354. Of course, this case deals with an actual financial injury, not a stigmatic one, and Plaintiff Gale invested in the FMIP Fund in the "course of his regular activities." In short, this cite should be given no weight.

particular investment decisions. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 98 (2007); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-440 (1999).

*Id.* Indeed, "[a]ll courts within the Sixth Circuit that have considered the issue have determined that *Thole* applies (consistent with its language) only to defined-benefit plans." *See McNeilly v. Spectrum Health System*, No. 20-cv-870, slip op. at 7 (W.D. Mich. July 16, 2021) (citing *Davis v. Magna Int'l of America*, 2021 WL 1212579, at *4-5 (E.D. Mich. Mar. 31, 2021); *McCool v. AHS Mgmt. Co., Inc.*, 2021 WL 826756, at *3 (M.D. Tenn. March 4, 2021)).

As the Western District of Michigan court held in *McNeilly*, "[g]iven the clear distinction here, *Thole* does not immediately foreclose Plaintiffs' claims in this lawsuit: the Supreme Court clearly left the door open for participants in a defined-contribution plan to challenge their plan fiduciaries' investment decisions, so long as they can establish normal Article III standing." *See McNeilly*, No. 20-cv-870, slip op. at 6. Indeed, "[c]ourts post-*Thole* have generally rejected the argument that a plaintiff's ERISA challenge must be confined to the individual funds in which he or she invested." *See McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870, at *4 (D.N.J. Apr. 13, 2021) (citing *Cates v. Trs. of Columbia Univ.*, 2021 WL 964417, at *2 (S.D.N.Y. Mar. 15, 2021); *Parmer v. Land O'Lakes, Inc.*, 2021 WL 464382, at *3 (D. Minn. Feb. 9, 2021); *Kurtz v. Vail Corp.*, 2021 WL 50878, at *6 (D. Colo. Jan. 6, 2021); *Boley v. Univ. Health Servs., Inc.*, 2020 WL 6381395, at *2 (E.D. Pa. Oct. 30, 2020)).

A similar outcome applies for those time periods in which Plaintiffs were not yet invested in the Plan's stable value fund. ERISA §502(a)(2) provides for a civil action "by a participant . . . for appropriate relief under" ERISA §409. Plaintiffs all allege that they are "participants." ECF No. 16, ¶¶ 31, 34, 37, 40 (PageID #334-335)). It is well settled, moreover, that suit under ERISA §502(a)(2) is "brought in a representative capacity on behalf of the plan as a whole" and that remedies under §409 "protect the entire plan." *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n. 9 (1985); *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008). Indeed, courts

14

have long recognized that a plaintiff who is injured in her own assets – so has Article III standing –

may proceed under § 1132(a)(2) on behalf of the plan or other participants even if the relief sweeps

beyond her own injury. *See, e.g., Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir.

2009); *Davis*, 2021 WL 1212579, at *4-*5; *McCool*, 2021 WL 826756, at *3).

In all, Plaintiffs have satisfied the requirements of Article III because they have alleged

actual injury to their Plan accounts through excessive RKA fees and stable value fund fees. ECF

No. 16, ¶ 43 (PageID #335). This injury is fairly traceable to Defendants' conduct, a causal

connection between Defendants' alleged conduct and Plaintiffs' losses exists, and Plaintiffs have

demonstrated a likelihood that their injuries will be redressed by a favorable judgment. *Id.*

Additionally, because the Sixth Circuit has recognized that a plaintiff with Article III standing may

proceed under ERISA §502(a)(2) on behalf of the plan or other participants, *see Fallick v.

Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.1998) ("[T]he standing-related provisions of

ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all

individuals affected by the [fiduciary's] challenged conduct, regardless of the representative's lack

of participation in all the ERISA-governed plans involved."), Plaintiffs here may seek relief under

ERISA § 502(a)(2) that sweeps beyond their own injuries. ECF No. 16, ¶ 44 (PageID #335).

Therefore, Plaintiffs have standing to bring these stable value fund claims both because Plaintiff

Gale is invested in such funds and because Plaintiffs may pursue relief once they have Article III

standing that sweeps beyond their own injuries. Defendants' standing challenge to Plaintiffs' stable

value fund investment claims should therefore be dismissed.

**B.** **<u>Plaintiffs Have Plausibly Pled That Defendants Breached Their Fiduciary Prudence By Selecting and Maintaining the Excessively Expenses FMIP Fund in the Plan</u>**

Fiduciaries have a general duty to monitor all investment expenses, including stable value

fund expenses and, more generally, plan fiduciaries have a prudential duty to be cost-conscious in

the administration of a plan. *See Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016). Contrary to Defendants' contentions, ECF No. 19 at PageID #398-408, Plaintiffs point to meaningful benchmarks under *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822-23 (8th Cir. 2018)), in the form of the stable value funds in the Morningstar US CIT Stable Value Index ("MSVI"), ECF No. 16, ¶¶ 162-165 (PageID #359-360), and a specific fund, the T. Rowe Price Stable Value N Fund ("TRPN"), similar in design, investment objectives, and size, to the Plan's FMIP stable value fund, *Id.*, ¶¶ 170-176 (PageID #361-362).

More specifically, in Count II of the Amended Complaint, Plaintiffs assert a breach of the duty of prudence focused on excessive fees associated with the Fidelity Managed Income Portfolio Fund (FMIP). ECF No. 16, ¶¶ 154, 161-176, 207-220 (PageID #358, 359-362, 367-369). Plaintiffs allege that "both the MSVI and TRPN . . . provide meaningful benchmarks to use in evaluating whether the plan fiduciaries employed an imprudent process by selecting and retaining the FMIP for the Plan prior to and throughout the Class period." *Id.*, ¶ 176 (PageID #362). The MSVI stable value index "serves as a benchmarking tool for stable-value asset managers and provides insight into stable-value market trends." *Id.*, ¶ 163 (PageID #359). As for the TRPN, it is a meaningful benchmarks to the Plan's FMIP because "[b]oth follow a similar investment strategy and similar implementation of that investment strategy," *id.*, ¶ 167 (PageID #360), "[t]he FMIP and TRPN invest in similar vehicles, i.e. guaranteed investment contracts ('GICs'), bank investment contracts ('BICs'), synthetic investment contracts ('SICs'), and/or separate account contracts ('SACs'), fixed income securities, and money market funds," *id.*, ¶ 168 (PageID #360), and "[b]oth funds also have similar management fee levels for the share classes in question of 0.20%/0.15% per year for both funds (as of June 30, 2023) [and b]oth funds also both have sizable assets under management (AUM) of about $19 billion (Fidelity) and about $22 billion (T. Rowe Price) as of December 31, 2022." *Id.*, ¶¶ 170-171 (PageID #361). As stable value funds, the funds that make

up the index and TRPN have the same risk profile and objectives. ECF No. 16, ¶ 166-174 (PageID #360-361). Indeed, "[h]aving selected a stable value option for the stability requirement for the plan, there are no other considerations under modern portfolio theory, such as diversification of underlying holdings and wrap providers, aggregate credit quality and duration, contract features, fee transparency, termination options, or portability, that reasonably warrant the selection and retention of the FMIP over less expensive stable value options like the TRPN throughout the Class Period." *Id.*, ¶ 175 (PageID #362); *see also Disselkamp*, 2019 WL 3536038, at *8 ("Plaintiffs note a defining feature of a stable value fund is its stability. It is reasonable to conclude that if a predictable investment continues to chronically underperform, one could draw a conclusion that the fiduciaries overseeing that fund have breached their duty.").

The district court in *Johnson v. Parker-Hannifin, Corp.*, 2023 WL 8374525 (N.D. Ohio Dec. 4, 2023), recently observed that "[a]t a minimum, for these types of allegations to support a claim, the complaint must contain sufficient 'context,' showing that the challenged funds underperformed relative to their stated goals." *Id.* at *6 (citing *CommonSpirit*, 37 F.4th at 1164-65; *TriHealth*, 40 F.4th at 449). If the plaintiff chooses to do so through comparator funds, as the Plaintiffs do here, they "must show that the challenged funds and the comparator funds share the same investment 'strategies,' 'risk profiles,' and 'objectives.'" *Id.* (citing *CommonSpirit*, 37 F.4th at 1165, 1167). Here, Plaintiffs have shown that both the stable value funds in the MSVI and the TRPN stable value fund have the same investment strategies, risk profiles, and objectives through multiple, non-conclusory allegations neither *CommonSpirit* nor *Johnson*. ECF No. 16, ¶¶ 161-175 (PageID # 359-362).

Nor does the Amended Complaint deal with a "narrow window of time," as in *CommonSpirit*, 37 F.4th at 1166 (affirming dismissal of claim based on isolated performance window of time), but *eleven years* of consistent higher fees by the FMIP compared to both the

17

overall stable value fund index and compared to the materially similar TRPN stable value fund. In any event, the law is clear that claims for breach of the duty of prudence in the Sixth Circuit "require evidence that an investment was imprudent from the moment the administrator selected it, that the investment became imprudent over time, or that the investment was otherwise clearly unsuitable for the goals of the fund based on ongoing performance." *See TriHealth*, 40 F.4th at 443. Here, Plaintiffs have alleged all three bases, including that (1) the Plan paid imprudent fees with regard from the FMIP from the beginning of the Class Period in 2017, ECF No. 16, ¶ 165 (PageID #360); (2) had remained imprudent for eleven years from 2012 to 2022, *id.*; and (3) the FMIP was clearly unsuitable for the goals of the fund based on comparisons with the MSVI and TRPN meaningful benchmarks and as illustrated in charts provided in the Amended Complaint. *Id.*, ¶¶ 165, 174 (PageID #360, 361). Consequently, Plaintiffs have pled sufficient facts demonstrating that the challenged stable value fund underperformed relative to "meaningful benchmarks." *See CommonSpirit*, 37 F.4th at 1167 (quoting *Meiners*, 898 F.3d at 822). All of Plaintiffs' comparators – the funds in the MSVI Index and the TRPN stable value fund – constitute meaningful benchmarks.

On a similar stable value fund ERISA claim in this very court, *Disselkamp*, 2019 WL 3536038, the court denied the motion to dismiss finding that "both Plaintiffs and Defendants have submitted exhibits and engaged in detailed arguments concerning comparative credit ratings for the funds. A motion to dismiss is not, however, the appropriate vehicle for arguments regarding the truth of Plaintiffs' allegations or the accuracy of their statements. The Court will therefore not attempt to resolve these issues at this juncture." *See id.* at *8 (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). The same is true here and provides another basis on which to deny Defendants' motion to dismiss the stable value fund claims.

In short, because Plaintiffs have standing and have plausibly pled that the FMIP investment should never have been selected, remained imprudent over time, and was otherwise unsuitable for the goals of this investment type of stable value fund, the Court should deny Defendants' motion to dismiss Plaintiffs' breach of the duty of prudence claim based on the excessive fees of the FMIP Fund.

## III.   THE COURT SHOULD NOT DECIDE THIS MOTION BASED ON DEFENDANTS' COUNTER-NARRATIVE OF FACTS

All of Defendants' challenges to Plaintiffs' comparator plans and meaningful benchmarks come down to Defendants asking that the Court accept an alternate set of facts than those alleged in the Amended Complaint. *See Seibert v. Nokia of Am. Corp.*, 2023 WL 5035026, at *10 (D.N.J. Aug. 8, 2023). However, initial miscalculations by Plaintiffs or failure to provide additional information concerning comparator plans or benchmarks based on a lack of information is not "enough to thwart Plaintiffs' claim at the pleading stage," where the Court must draw all plausible inferences in Plaintiffs' favor, "particularly when considered alongside the Complaint's other allegations of imprudence" regarding the Plan's excessive RKA and stable value fund fees. *Id.* (quoting in part *Silva v. Evonik Corp.*, 2020 WL 12574912, at *8 (D.N.J. Dec. 30, 2020)).

For instance, Defendants attack Plaintiffs' comparator plans and maintain that the form 5500s on which Plaintiffs rely also do not provide information from which the Court could plausibly infer that the RKA fees charged by the other recordkeepers covered the same services as the AmerisourceBergen Plan. ECF No. 19 at PageID #405-406. But as Plaintiffs explain in detail for each of the comparator plans which are both *smaller or larger* than the AmerisourceBergen Plan (as all comparators must be), these plans are "meaningful benchmarks." *See Meiners*, 898 F.3d at 822; ECF No. 16, ¶¶ 117-145 (PageID #350-356). As the Eighth Circuit pointed out, "[t]he critical inquiry . . . is whether the missing factual allegations are facts about the funds themselves, which ERISA plaintiffs can research, or facts about the fiduciary's internal processes,

which ERISA plaintiffs generally lack." *See Meiners*, 898 F.3d at 822-23. Here, Plaintiffs have provided the necessary context-specific facts about these comparable plans to provide a "sound basis for comparison." *See id.* at 822. So, for instance, Plaintiffs allege that the fact "that the Plan has slightly more participants than the Michelin plan does not make it a meaningless comparable plan because, all else being equal, if the Michelin plan can obtain a fee of $35/pp with 16,521 participants, then the Plan, with 21,650 participants, should be able to obtain a fee of around $35/pp, or lower" ECF No. 16, ¶ 120 (PageID #351), and "[t]he fact that the Plan has fewer participants than the Genesis plan does not make the Genesis plan a meaningless comparable plan. . . . [T]he Genesis plan Total RKA fee provides a data point that enables the production of a trendline that provides reliable evidence of the reasonable fee rate for RKA services across a range of between around 15,000 and 25,000 participants. The massive disparity between the reliable estimate of the reasonable market Total RKA fee rate for RKA services for the Plan (based on having 21,650 participants) of around $28/pp and the Plan's actual Total RKA fee rate of around $59/pp leads to a reasonable inference that the Plan's process was not prudent." *Id.*, ¶ 137 (PageID #355).

Although it is impossible to provide plans with the exact same number of participants as the AmerisourceBergen Plan, the allegations, charts, and graphs, provided in the Amended Complaint all set up a "trend line . . . generated from these data points [that] represent a reasonable estimate of the fee rate that several recordkeepers, including Fidelity itself, serving the mega market would be willing to accept in a competitive environment to provide Total RKA services to the AmerisourceBergen Plan." ECF No. 16, ¶ 106 (PageID #348). As a result, "[t]he most plausible explanation of the disparity of between $24/pp and $36/pp from the comparable plans and the Plan (an excess of between 71% and 154%) is that the Plan's fiduciaries engaged in imprudent conduct. *Id.*, ¶ 142 (PageID #356).

Defendants also spend much time arguing about service and compensation codes in the AmerisourceBergen Plan and the comparator plan 5500 forms. ECF No. 19 at PageID #405-406. Based on there being different compensation and service codes being listed in the 5500 forms, Defendants spill much ink contending that Plaintiffs are not making apple-to-apple comparisons. *Id*. Although it is true that comparator plans sometimes utilize different service or compensation codes for the services received on the Form 5500, the fact remains the Total RKA fees are fungible and commoditized, and any differences between the plans in these codes are immaterial from a pricing perspective. ECF No. 16, ¶ 60 (PageID #338). Moreover, courts believe that the pleading stage is not the right time to argue over the meaning of different codes used in the 5500 forms, which is more an art than science. *See e.g., Tolomeo*, 2023 WL 3455301, at *4 ("Defendants also argue that documents used by Plaintiffs to determine the comparator plans' rates contradict Plaintiffs' contention that the Plan and comparator plans received the same services because the service codes listed on tax documents (Form 5500s) are not the same . . . Defendants' argument about the tax documents may prove persuasive at a later stage of the litigation, however at the pleading stage the Court accepts all well-pleaded facts as true and draws reasonable inferences in Plaintiffs' favor."); *Seibert,* 2023 WL 5035026, at *10. In short, neither the Form 5500 codes, nor any other counter-narrative Defendants advance, undermine the essential fungible nature of RKA services provided to massive plans, like the AmerisourceBergen Plan.[8]

---

[8] Defendants also take umbrage regarding Plaintiffs' reliance on a stipulation that Fidelity made in another excessive RKA fees case. *See* ECF No. 19 at PageID #407 (citing *Moitoso v. FMR, LLC*, 451 F. Supp. 3d 189 (D. Mass. 2020)). To be clear, Plaintiffs use this stipulation to establish that not only are RKA fees commoditized, but also to show what a massive plan, the Fidelity Plan, paid in RKA fees during the Class Period. ECF No. 16, ¶¶ 78-80 (PageID #342). As such, this is factual information that provides context to Plaintiffs' other, non-conclusory allegations concerning the excessive nature of the AmerisourceBergen Plan's RKA fees and should be accepted as true for purposes of this motion. *Accord McDonald v. Lab'y Corp. of Am. Holdings*, 2023 WL 4850693, at *6 (M.D.N.C. July 28, 2023) ("[T]he Court finds that the Fidelity plan can provide a point of comparison at this stage of the proceedings. The Court makes this finding because: (1) the Complaint alleges that that recordkeeping fees are set based on plan size;

Furthermore, Defendants are mistaken that the Plaintiffs' RKA calculations for comparator plans "make no sense." ECF No. 19 at PageID #409-410. As an initial matter, Plaintiffs set out in comprehensive detail the seven-step methodology they followed in calculating the relative RKA numbers. ECF No. 16, ¶ 73 (PageID #341). Furthermore, Plaintiffs provide a comprehensive, detailed overview of the direct compensation, indirect compensation, and administrative credits, derived from the comparator plans. *Id.*, ¶¶ 117-137, 145 (PageID #350-356).[9] If the amount of detail that Plaintiffs have provided with regard to the AmerisourceBergen Plan and the meaningful benchmarks remains inadequate for Defendants, it is hard to imagine what would count as a sound basis for comparison. Of course, there are no adequate comparisons under Defendants' impossible version of the pleading standard. Luckily, for Plaintiffs, the law of the Sixth Circuit clearly indicates that Plaintiffs have provided more than enough facts in their allegations that RKA and stable value funds fees were excessive relative to services provided and that the comparator plan or indexes are meaningful benchmarks as far as what the AmerisourceBergen Plan should have been able to negotiate for RKA fees and stable value funds from Fidelity during the Class Period. *See Peck*, 2022 WL 17260807, at *5.

Finally, "argument regarding the sufficiency of the comparator plans is premature. At the pleading stage, plaintiffs should not be sent packing for not finding the perfect set of comparators

---

and (2) the *Moitoso* stipulation specified it was making a comparison with other plans with over $1 billion in assets and the Complaint here alleges that the LabCorp Plan had over $1 billion in assets.").

[9] Defendants make much of the fact that the AmerisourceBergen Plan and the other plans *may have* different Plan recordkeeping amounts paid by the employer for Plan service or paid to other Plan service providers like trustees. ECF No. 19 at PageID #409 (maintaining that Forms 5500 report only the direct compensation paid by the plan and not any additional amounts paid by the employer). With regard to employer payments, Plaintiffs stress that Defendants *do not and cannot* provide the actual amounts paid by employers for RKA services because such amounts are concededly not provided as part of the Form 5500 filings. In short, this argument does not undermine Plaintiffs' arguments with regard to the comparator plans serving as meaningful benchmarks.

without any access to discovery tools." *See Mazza*, 2023 WL 3558156, at *4 (noting that a defendant plan's challenges to the suitability of comparator plans "warrant[ed] exploration during discovery," but did not "require dismissal of Mazza's claim at the pleading stage."). Plaintiffs do not need to describe the specific RKA services received by the AmerisourceBergen plan and the comparator plans, as that level of specificity is not required at the pleading stage.

## IV.   PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF DUTY TO MONITOR

In addition to stating a claim for breach of the fiduciary duty of prudence against Defendants based on excessive RKA and stable value fund fees, Plaintiffs have stated claims against AmerisourceBergen and its Board for failing to adequately monitor its Plan fiduciary appointees. ECF No. 16, ¶¶ 48, 221-234 (PageID #336, 370-372). Because Plaintiffs have stated plausible claims for breach of fiduciary duty of prudence, they are also entitled to pursue their failure to monitor claims. *See Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010) ("[F]ailure to monitor claim is derivative in nature and [is] premised on underlying breach of fiduciary duty.").

Moreover, "because the appropriate ERISA mandated monitoring procedures vary according to the nature of the Plan at issue and other facts and circumstances, an analysis of the precise contours of the defendants' duty to monitor at this stage is premature." *See In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 215 (D. Conn. 2007). Thus, Plaintiffs have plausibly alleged their duty to monitor claims in Counts III and IV of the Amended Complaint, and Defendants' motion to dismiss on this ground should also be rejected by the Court.

## CONCLUSION

For all the reasons stated above, Plaintiffs respectfully request that the Court deny in its entirety Defendants' motion to dismiss the Amended Complaint.

Dated this 11ᵗʰ day of December, 2023

Respectfully submitted,

*s/ Paul M. Secunda*
Paul M. Secunda (pro hac vice)
**WALCHESKE & LUZI, LLC**
235 Executive Dr., Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
E-Mail: psecunda@walcheskeluzi.com

Paul Hershberg
**PAUL HERSHBERG LAW, PLLC**
Kaden Tower, Suite 1100
6100 Dutchmans Lane
Louisville, Kentucky 40205
Telephone: 502-736-7040
Facsimile: 502-736-7510
paul@hershberglaw.com

*Attorneys for Plaintiffs and Proposed Class*

## CERTIFICATE OF SERVICE

Paul M. Secunda, the attorney, certifies that on December 11, 2023, he served a copy of the foregoing Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint upon all counsel of record by electronic delivery via the CM/ECF system maintained by the Clerk of the U.S. District Court.

*s/ Paul M. Secunda*
Paul M. Secunda

24

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| KENNETH DUKES, MARK A. GALE, CHRISTINE CHAVIS, AND DAVID R. FLY, individually, and as representatives of a Class of Participants and Beneficiaries of the AmerisourceBergen Corporation Employee Investment Plan,<br><br>   Plaintiffs,<br><br>    v.<br><br>AMERISOURCEBERGEN CORPORATION, et al.<br><br>   Defendants | Case No. 3:23-CV-313-DJH-CHL |

---

**ORDER**

---

The Defendants, having filed a Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 19),

the Plaintiffs having responded in opposition, and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion be and hereby is DENIED.