THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KENNETH DUKES, MARK A. GALE, CHRISTINE CHAVIS, and DAVID R. FLY, individually, and as representatives of a class of Participants and Beneficiaries of the Amerisource-Bergen Corporation Employee Investment Plan,<br><br>Plaintiffs,<br><br>v.<br><br>AMERISOURCEBERGEN CORPORATION, BOARD OF DIRECTORS OF AMERISOURCEBERGEN CORPORATION, and AMERISOURCEBERGEN CORPORATION BENEFITS COMMITTEE,<br><br>Defendants. | Case No. 3:23-CV-313-DJH-CHL |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' <u>AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

                                        **Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.     Plaintiffs' Excessive-RKA-Fee Claim Should Be Dismissed. .......................................... 2

          A.     Plaintiffs' Conclusory Allegation That All RKA Services Are the Same Fails. .................................................................................................................... 2

          B.     Plaintiffs' Six Fee Comparisons Are Meaningless. .............................................. 6

    II.    Plaintiffs' Imprudent-Investment Claim Should Be Dismissed......................................... 9

          A.     Plaintiffs Lack Standing to Pursue Their Imprudent-Investment Claim. .............. 9

          B.     Plaintiffs Have Not Stated a Plausible Imprudent-Investment Claim. ................ 12

    III.   Plaintiffs Do Not State a Claim for Breach of Duty To Monitor.................................... 14

CONCLUSION .........................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ................................................................................................1, 6

*Beldock v. Microsoft Corp*,
   2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) ..................................................................12

*Bradley v. Jefferson Cnty. Pub. Schs.*,
   598 F. Supp. 3d 552 (W.D. Ky. 2022)....................................................................................6

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)..............................................................................................................11

*Davis v. Wash. Univ. in St. Louis*,
   960 F.3d 478 (8th Cir. 2020) ................................................................................................13

*Disselkamp v. Norton Healthcare, Inc.*,
   2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) .......................................................................12

*England v. DENSO Int'l Am. Inc.*,
   2023 WL 4851878 (E.D. Mich. July 28, 2023) .....................................................................4

*Forman v. TriHealth, Inc.*,
   40 F.4th 443 (6th Cir. 2022) ...................................................................................12, 13, 14

*Hughes v. Northwestern Univ.*,
   63 F.4th 615 (7th Cir. 2023) ...............................................................................................5, 6

*Hughes v. Northwestern Univ.*,
   595 U.S. 170 (2022)............................................................................................................3, 7

*Johnson v. Parker-Hannifin, Corp.*,
   2023 WL 8374525 (N.D. Ohio Dec. 4, 2023) .........................................................12, 13, 14

*LaRue v. DeWolff, Boberg & Assocs.*,
   552 U.S. 248 (2008)..............................................................................................................10

*Lewis v. Casey*,
   518 U.S. 343 (1996)..............................................................................................................11

*In re LinkedIn ERISA Litig.*,
   2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) .........................................................10, 11, 13

*Mateya v. Cook Grp. Inc.*,
  2023 WL 4608536 (S.D. Ind. June 16, 2023)...........................................................................8

*Peck v. Munson Healthcare*,
  2022 WL 17260807 (W.D. Mich. Nov. 6, 2022)......................................................................7

*Perkins v. United Surgical Partners Int'l, Inc.*,
  2022 WL 824839 (N.D. Tex. Mar. 18, 2022).........................................................................10

*Shaibi v. Louisville & Ind. R.R. Co.*,
  2020 WL 1539936 (W.D. Ky. Mar. 31, 2020) ........................................................................6

*Sigetich v. Kroger Co.*,
  2023 WL 2431667 (S.D. Ohio Mar. 9, 2023)..............................................................1, 3, 4, 7

*Singh v. Deloitte LLP*,
  650 F. Supp. 3d 259 (S.D.N.Y. 2023).......................................................................................8

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) .......................................................................................... *passim*

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................................................10

*Thole v. U.S. Bank, N.A.*,
  140 S. Ct. 1615 (2020).......................................................................................................10, 11

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).........................................................................................................9, 11

*WCI, Inc. v. Ohio Dep't of Pub. Safety*,
  18 F.4th 509 (6th Cir. 2021) ....................................................................................................9

*Wehner v. Genentech, Inc.*,
  2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ...........................................................................13

*Yost v. First Horizon Nat'l Corp.*,
  2011 WL 2182262 (W.D. Tenn. June 3, 2011) .....................................................................10

**Statutes**

29 U.S.C. § 1132(a)(2)....................................................................................................................10

## INTRODUCTION

As explained in Defendants' opening memorandum, Dkt. 19 ("Mem."), the Amended Complaint fails under governing Sixth Circuit law. Plaintiffs' primary response is to invoke out-of-circuit caselaw and insist that the Court cannot even assess the plausibility of their allegations before discovery. This strategy fails. The Court should join numerous others in the Sixth Circuit that have recently dismissed similar complaints.

Starting with the RKA-fee claim, the Sixth Circuit requires Plaintiffs to plausibly allege that the Plan's RKA fees were excessive "relative to the services provided," a necessarily "context specific" inquiry. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164, 1169 (6th Cir. 2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). Far from meeting that requirement, Plaintiffs allege only that "RKA services are commoditized" and thus "identical" among "large" plans, and argue that "the *Seventh* Circuit has found these allegations" to be sufficient. Dkt. 20, Opp. at 3 (emphasis added). But this case is not in the Seventh Circuit. And Plaintiffs ignore numerous decisions from within the Sixth Circuit (not to mention a recent *Seventh* Circuit ruling) squarely rejecting Plaintiffs' same allegations because they "fail[] to give any context to the services rendered to the [plan]," and cannot plausibly "lead to the inference that the [plan's] recordkeeping fees were excessive relative to the services rendered." *Sigetich v. Kroger Co.*, 2023 WL 2431667, at *9 (S.D. Ohio Mar. 9, 2023); *see also Albert v. Oshkosh Corp.*, 47 F.4th 570, 580 (7th Cir. 2022) (affirming dismissal of RKA-fee claims for the same reasons).

Plaintiffs also largely ignore arguments that their six comparator plans are not "meaningful benchmarks" for the Plan, on the theory that such criticisms are "premature [a]t the pleading stage." Opp. 22-23. That is wrong. The Sixth Circuit is clear on this point too: Plaintiffs must allege "meaningful benchmark[s]" to state a claim. *See CommonSpirit*, 37 F.4th at 1167. After all, Plaintiffs' theory is that the Plan's RKA fees were excessive when compared to "similar" plans

1

that supposedly paid less. As such, the Court must scrutinize the factual allegations (or lack thereof) underpinning Plaintiffs' comparisons, including the incongruence of their fee calculations, their failure to account for the types and levels of services received in exchange for the fees at issue, and other shortcomings. Simply put, Plaintiffs' alleged fee comparisons are meaningless, and nothing in their Opposition suggests otherwise.

Finally, Plaintiffs cannot salvage their claim that the FMIP was an imprudent investment option for the Plan. The Opposition concedes that Gale is the only Plaintiff who invested in the fund—and he did so just *one day* before filing the Amended Complaint. Opp. at 12. This confirms Gale suffered no injury from any of the fund's alleged underperformance, meaning he has no Article III standing to pursue the FMIP claim. Dismissal is warranted on that basis alone, under Rule 12(b)(1). And it is also warranted under Rule 12(b)(6), because nothing in Plaintiffs' Opposition avoids the conclusion that the Amended Complaint fails to plausibly allege that the FMIP underperformed a "meaningful benchmark." *CommonSpirit*, 37 F. 4th at 1167-68.

For all these reasons and those discussed in Defendants' opening memorandum, the Court should dismiss the Amended Complaint with prejudice.

## ARGUMENT

### I. Plaintiffs' Excessive-RKA-Fee Claim Should Be Dismissed.

#### A. Plaintiffs' Conclusory Allegation That All RKA Services Are the Same Fails.

Under *CommonSpirit*, to state a claim, Plaintiffs must plausibly allege the RKA services the Plan received "are equivalent to those provided" to the six alleged comparator plans. 37 F.4th at 1169. As already discussed, Plaintiffs try to skirt this requirement by alleging that "RKA services are commoditized" and "essentially fungible," so the services available to all large retirement plans are "materially identical." *See* Mem. at 18-22; Am. Compl. ¶¶ 62-63, 89, 104. The Opposition doubles down on this meritless strategy, asserting that "Plaintiffs maintain that

2

recordkeeping services are fungible or commoditized and, in this manner, plead that the AmerisourceBergen Plan RKA fees were excessive relative to the recordkeeping services rendered." Opp. at 2.

Such conclusory pleading does not cut it. As the Sixth Circuit has explained, different RKA service providers "might offer fewer services and tools to plan participants," while others might offer or provide more (or different) RKA services, and of course different plans may elect to receive different RKA services (or service levels) from whichever provider they happen to choose. *CommonSpirit*, 37 F.4th at 1169. Plaintiffs allege no *facts* suggesting otherwise. And they cannot simply elide the above differences with conclusory allegations that all plans receive "materially identical" services. Permitting such conclusory pleading would allow a plaintiff to avoid dismissal by alleging "magic words," rather than well-pleaded facts "relevant to determining whether a fee is excessive under the circumstances," including whether the relevant plan received services that were "equivalent to those provided" to the alleged comparator plans. *Id.* (quoting *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009)); *see also Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) ("[T]he appropriate inquiry [for an ERISA imprudence claim] will necessarily be context specific.").

For these same reasons, following *CommonSpirit*, courts in this circuit have rejected similar allegations that all plans receive "essentially fungible" RKA services. *See* Mem. at 19-20. In *Sigetich*, for example, the court rejected conclusory allegations regarding the fungibility of RKA services because they "fail[ed] to give *any context* to the services rendered to the [plan] or to the services rendered to [allegedly] comparable plans which may lead to the inference that the [plan's] recordkeeping fees were excessive relative to the services rendered." 2023 WL 2431667, at *9 (emphasis added). Likewise, in *Miller v. Packaging Corporation of America Inc.*, the court

3

rejected such allegations because they "provide[d] no facts to support [the plaintiff's] contention that the RKA services provided to mega plans are generally the same, or that the recordkeepers in his chart provided essentially the same services as [the challenged plan]." 2023 WL 2705818, at *5 (W.D. Mich. Mar. 30, 2023); *see also England v. DENSO Int'l Am. Inc.*, 2023 WL 4851878, at *3 (E.D. Mich. July 28, 2023) (dismissing claims because they did "not set forth facts to support the contention that the RKA services provided to mega plans are generally the same").[1]

These courts did not stop at the plaintiffs' conclusory allegations about "commoditized" RKA services, but searched elsewhere in the complaints for "the kind of context" the Sixth Circuit requires. *See CommonSpirit*, 37 F.4th 1169. In *Miller*, for example, the court looked to the public Form 5500 filings cited in the complaint, finding that "contrary to [the plaintiff's] assertions about uniformity among recordkeepers servicing large plans, the forms on which he relies suggest that the recordkeepers in his chart provided different types of services for their respective clients." 2023 WL 2705818, at *5. The same is true here, *see* Mem. at 19-20, and Plaintiffs do not even try to argue otherwise.[2] Similarly, where, as here, the alleged comparator plans reported paying widely varying fees, these differences "suggest that even minor variations in services impact per participant [RKA] fees." *Sigetich*, 2023 WL 2431667, at *9. Here again, Plaintiffs offer no response to this context and caselaw refuting the plausibility of their conclusory allegations that the Plan received RKA services that were "equivalent to those" provided to the six comparator plans alleged in the Amended Complaint. *CommonSpirit*, 37 F.4th at 1169.

---

[1] Plaintiffs offer no meaningful response to these decisions, and instead argue that this Court should follow an inapposite ruling issued by the Seventh Circuit under very different circumstances. *See infra* at 5-6.

[2] Unlike the court in the single out-of-circuit decision cited by Plaintiffs, *see* Opp. at 21 (citing *Tolomeo v. R.R. Donnelley & Sons, Inc.*, 2023 WL 3455301, at *4 (N.D. Ill. May 15, 2023)), the Sixth Circuit courts identified in Defendants' caselaw routinely consider Form 5500 service codes at the pleading stage when assessing a plaintiff's proposed comparator plans. This Court should do the same, particularly considering that the Amended Complaint expressly relies upon those same documents.

Instead, Plaintiffs mischaracterize the Sixth Circuit's pleading requirements, claiming "they do not need to describe the specific RKA services received by the [AB Plan] and the comparator plans[.]" Opp. at 23. But that is wrong for the reasons already discussed. Nevertheless, Plaintiffs ask the Court to ignore the growing body of caselaw dismissing similar RKA-fee claims under *CommonSpirit*, based on the Seventh Circuit's ruling in *Hughes v. Northwestern Univ.*, 63 F.4th 615 (7th Cir. 2023) ("*Hughes II*"). Opp. at 3. According to Plaintiffs, because "the Seventh Circuit has found [their] allegations involving the commoditization and fungibility of recordkeeping fees not to be conclusory, the Court should do the same here." *Id.* This appeal to out-of-circuit authority fails at every level.

First, this Court is not bound by the Seventh Circuit's decision in *Hughes II*. And Plaintiffs offer no explanation for how the recent district court cases cited above are inconsistent with the Sixth Circuit's binding precedent in *CommonSpirit*, which affirmed a Rule 12(b)(6) dismissal of similar claims alleging "excessive" RKA fees.[3] The Court should reject Plaintiffs' suggestion that this case turns on the Seventh Circuit's decision in *Hughes II*.

Second, Plaintiffs are wrong about *Hughes II* and Seventh Circuit caselaw generally. In *Hughes II*, the plaintiffs alleged that the fiduciaries imprudently selected *two* recordkeepers to provide the *same* recordkeeping services to the *same* retirement plan. 63 F.4th at 621-22, 631-37. Under those unique circumstances—which have no applicability here—the Seventh Circuit found allegations that one of the plan's two *allegedly duplicative* recordkeepers charged much higher fees than the other recordkeeper supported a plausible inference of fiduciary mismanagement.

---

[3] Plaintiffs' reliance on decisions and magistrate reports from district courts in the *Seventh* Circuit is unavailing for the same reasons. *See* Opp. at 7 (citing *Nohara v. Prevea Clinic Inc. et al.*, Case No. 20-CV-1079-WCG-SCD, *Mag. Rpt. and Recommendation*, Dkt. 96 (E.D. Wis. July 21, 2023); *Glick v. ThedaCare Inc*., Case No. 20-CV-1236-WCG-SCD, *Magistrate Report and Recommendation*, Dkt. 72 (E.D. Wis. July 20, 2023); *Mazza v. Pactiv Evergreen Services Inc*., 2023 WL 3558156 (N.D. Ill. May 28, 2023); *Tolomeo*, 2023 WL 3455301).

5

Moreover, the complaint in *Hughes II* included a host of other facts to support allegations that the fiduciaries mismanaged the plan, including by selecting and failing to monitor a confusing array of hundreds of overpriced and underperforming investment options, and by separately "locking-in" the plan to expensive and imprudent investment contracts with one of the plan's allegedly duplicative recordkeepers. *See Hughes II*, 63 F.4th at 621-22, 631-37. No similar allegations exist here. To the contrary, Plaintiffs' claims are materially identical to those the Seventh Circuit rejected around the same time it decided *Hughes II*, based largely on the Sixth Circuit's decision in *CommonSpirit*, no less. *See Albert*, 47 F.4th at 576 (relying on *CommonSpirit* to affirm dismissal and holding that allegations "that nine purportedly comparable plans paid less for recordkeeping . . . did not plausibly 'suggest that the fee charged [to the plan] was excessive in relation to the [recordkeeping] services provided'"). In short, to the extent Seventh Circuit precedent has any relevance here, it confirms that Plaintiffs' allegations are insufficient to state a plausible claim for relief under binding *Sixth* Circuit precedent.

      **B.**    **Plaintiffs' Six Fee Comparisons Are Meaningless.**

As discussed in Defendants' opening brief, Plaintiffs' RKA-fee allegations fail for additional reasons, including: (1) Plaintiffs rely on fees paid by just six other plans during a single year; and (2) Plaintiffs' fee comparisons selectively discount the total fees paid in relation to their comparator plans. *See* Mem. at 16-17, 22-24.

Plaintiffs' Opposition ignores the first point. The Court should treat that silence as a concession. *See Bradley v. Jefferson Cnty. Pub. Schs.*, 598 F. Supp. 3d 552, 566 (W.D. Ky. 2022) (where a plaintiff fails to respond to an argument in a motion to dismiss, it may be assumed that he concedes this point); *Shaibi v. Louisville & Ind. R.R. Co.*, 2020 WL 1539936, at *1 (W.D. Ky. Mar. 31, 2020) (failure to respond to arguments can be construed as a concession). In any event, Plaintiffs' silence is unsurprising. Even the caselaw cited in their Opposition underscores that

6

their small "comparator" set cannot support a plausible inference that the Plan's fees fell outside "the range of reasonable judgments". *Hughes*, 595 U.S. at 177. For example, Plaintiffs urge this Court to follow *Peck v. Munson Healthcare*, *see* Opp. at 8-9, which found the plaintiff "compared sufficiently similar plans for the purpose of stating a claim under ERISA." 2022 WL 17260807, at *6 (W.D. Mich. Nov. 6, 2022). But *Peck* offered 17 comparator plans—nearly *three times more* than are alleged here—and they did not suffer from the same flaws infecting Plaintiffs' few comparators in this case.[4] *See* Mem. at 18-24.

While Plaintiffs do address the second point above, their efforts fall short. First, Plaintiffs try to avoid the relevant pleading requirements by claiming that any "argument regarding the sufficiency of the comparator plans is premature." Opp. at 22. Plaintiffs cite no Sixth Circuit law to support this proposition, because none exists. To the contrary, *CommonSpirit* makes clear that to state a claim Plaintiffs must provide a "meaningful benchmark" at the pleading stage. *See* 37 F.4th at 1167. Thus, Courts in the Sixth Circuit have repeatedly dismissed similar RKA-fee claims for failing to plead any meaningful benchmarks. *See* Mem. at 18-24; *see, e.g.*, *Sigetich*, 2023 WL 2431667, at *10 n.6 (dismissing similar RKA-fee claim because allegations "fail[ed] to provide context as to what services [comparator plans] provided . . . which may make them a *meaningful comparator*") (emphasis added); *Miller*, 2023 WL 2705818, at *5 (same because plaintiffs' RKA-fee comparison was not "meaningful").

Next, Plaintiffs try to avoid their pleading burden in a different way. As shown in Defendants' opening brief, the Form 5500 documents for *five* of Plaintiffs' six comparator plans confirm that Plaintiffs have *underestimated* the total RKA fees paid by those five plans. This is because the Form 5500 documents expressly state that they report only fees paid *by the plans* for

---

[4] *See Peck,* Case No. 22-cv-00294-PLM-PJG, Dkt. No. 9 (Am. Compl. ¶ 95).

7

recordkeeping services, and exclude *additional amounts paid by the employers* who sponsor those plans. *See* Mem. at 22-23. Conceding this factual point, Plaintiffs try to shift their pleading burden by arguing that *Defendants* have failed to plead "the actual amounts paid by the *employers* because such amounts are concededly not provided as part of the Form 5500 filings." Opp. 22 n.9 (emphasis added). But this argument misses the point, and gives away the game: Not only is it *Plaintiffs'* burden to plausibly allege how much other service providers were paid for providing "equivalent" RKA services, but by admitting that this amount *cannot be determined* from the Form 5500 documents on which the Amended Complaint depends, Plaintiffs have likewise *conceded* that their comparator-fee allegations are not *plausibly* supported. Simply put, Plaintiffs' admitted guesswork about the total fees paid for RKA services provided to *five* of their six comparator plans confirms that dismissal is warranted. *See* Mem. at 22-23.

Finally, Plaintiffs have no justification for including only "direct" fees, while completely ignoring additional "indirect" fees, when estimating the "total" RKA fees paid by comparator plans. *See* Mem. at 23-24. Plaintiffs say they alleged "a comprehensive, detailed overview of the direct compensation, indirect compensation, and administrative credits, derived from the comparator plans." Opp. at 22. But this is just dissembling. It cannot change the fact that Plaintiffs plainly underestimated the total RKA fees paid by their comparator plans by simply ignoring the indirect fees those plans paid according to their own Form 5500 filings (on which Plaintiffs rely). This same flimsy approach has been rejected in other cases, and it should be rejected here, too. *See, e.g.*, *Miller*, 2023 WL 2705818, at *6; *Mateya v. Cook Grp. Inc.*, 2023 WL 4608536, at *8 (S.D. Ind. June 16, 2023); *Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 267 (S.D.N.Y. 2023).[5]

---

[5] The Opposition ignores Defendants' other arguments showing Plaintiffs' comparators are not meaningful benchmarks. For example, Plaintiffs ignore that the Sanofi plan's Form 5500 document shows the plan paid approximately $45 per participant in direct RKA fees in 2018, nearly double the amount Plaintiffs alleged. *See* Mem. at 23-24. Plaintiffs also ignore that the inclusion of "a la carte" and "ad hoc" fees in

8

## II.      Plaintiffs' Imprudent-Investment Claim Should Be Dismissed.

### A.      Plaintiffs Lack Standing to Pursue Their Imprudent-Investment Claim.

As discussed in the opening Memorandum, Plaintiffs lack Article III standing to assert a claim challenging the FMIP because Gale—the only Plaintiff who invested in the fund—did not invest during the 2017 to 2022 period when the Amended Complaint alleges the FMIP underperformed, and therefore suffered no injury related to the fund. *See* Mem. 6-9.

The Opposition does not dispute this, nor could it. Acknowledging that Gale invested in the FMIP for the first time just one day before the Amended Complaint was filed, the Opposition argues Gale might suffer an injury at some point before "the date of judgment" in this case. Opp. at 12. But that is not how Article III standing works. *See* Mem. at 6-9; *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021) ("mere risk of future harm, standing alone, cannot qualify as a concrete harm" for Article III purposes); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 515 (6th Cir. 2021) ("The hypothetical threat of some future harm, even a likely future harm, is not an injury-in-fact."). The Amended Complaint offers *zero* allegations that Gale has suffered any injury arising from his last-minute investment in the FMIP, and for that reason alone his claim must be dismissed for lack of Article III standing. *See* Fed. R. Civ. P. 12(b)(1).[6]

The Opposition asserts that "even if Plaintiff Gale had not decided to invest in the FMIP Fund when he did," Plaintiffs still have Article III standing to pursue a claim about a fund they never selected because they bring suit "on behalf of the Plan[.]" Opp. at 12-15. Plaintiffs are

---

the Plan's "Total RKA Fees" amount renders their calculations meaningless because "a la carte" and "ad hoc" fees vary from plan to plan, and the Amended Complaint alleges nothing about the relative proportion of a plan's total fees attributable to participant-elected "a la carte" or "ad hoc" services. *Id.* at 24-25. Again, Plaintiffs' failure to respond to these straightforward arguments amounts to a concession.

[6] The Opposition denies as "rank speculation" the idea that Gale sought to manufacture a claim by investing in the FMIP just *one day* before filing the Amended Complaint. Opp. at 12. The Opposition, however, offers no other reason why Gale would voluntarily invest in a fund—and choose to remain invested—while supposedly believing that investment to be imprudent.

wrong. As current or former Plan participants, Plaintiffs may have *statutory* standing to sue on behalf of the Plan, *see* 29 U.S.C. § 1132(a)(2), "[b]ut the [statutory] cause of action does not affect the Article III standing analysis." *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1620 (2020). In fact, the Supreme Court rejected this precise argument in *Thole*. *See id.* at 1622; *see also, e.g.*, *Perkins v. United Surgical Partners Int'l, Inc.*, 2022 WL 824839, at *3 (N.D. Tex. Mar. 18, 2022) ("[T]hat ERISA authorizes a participant to sue for restoration of plan losses does not affect the Article III standing analysis.") (citations omitted).

Article III standing requires a "concrete and particularized injury" that is "fairly traceable to the challenged conduct." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury must "affect the plaintiff in a personal and individual way." *Id.* at 339-40 (citations omitted). And in the ERISA defined-contribution plan context, individual participants can be injured only by "fiduciary breaches that impair the value of plan assets in [the] *participant's individual account*." *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008) (emphasis added). Because Plaintiffs have alleged no such injury with respect to the FMIP, their claims must be dismissed. *See* Mem. at 6-8; *Yost v. First Horizon Nat'l Corp.*, 2011 WL 2182262, at *6 (W.D. Tenn. June 3, 2011) (plaintiff who "never had any holdings in the First Funds . . . did not suffer . . . injury-in-fact and [lacked] standing to sue for any breach of fiduciary duty as to the selection or retention of First Funds"); *Perkins*, 2022 WL 824839, at *4 (same); *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021) (same).

The Opposition's further arguments are meritless. First, Plaintiffs try to distinguish *Thole*. *See* Opp. at 13-14. They emphasize that *Thole* involved a defined-benefit plan, not a defined-contribution plan like the Plan here. But the type of retirement plan at issue had no bearing on the Supreme Court's Article III analysis, because the Constitution does not distinguish between

10

different types of ERISA plans. As such, the question the Supreme Court addressed was whether the plaintiffs had suffered any "personal" injury resulting from the alleged breaches of fiduciary duty. *Thole,* 140 S. Ct. at 1619. The Court determined the answer was "no" because the plaintiffs had not experienced any actual reduction in their accrued plan benefits. The same goes here: Having never invested in the FMIP during the alleged period of underperformance, Plaintiffs experienced no resulting reduction in the value of their Plan accounts. For this same reason, "[s]ince *Thole*, district courts across the country have largely held that ERISA plaintiffs do not have standing to challenge the offering of specific funds that they did not allege that they personally invested in." *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *4 (collecting cases). This Court should do the same.

Second, Plaintiffs separately argue they have Article III standing to challenge the FMIP because "they have alleged actual injury to their Plan accounts through excessive RKA fees[.]" Opp. at 15. In Plaintiffs' view, they can establish standing to challenge the prudence of offering the FMIP as an option in the Plan by bootstrapping that "imprudent-investment" claim to their supposed injuries stemming from their distinct "RKA-fee" claim. Plaintiffs are wrong. In the Supreme Court's words, "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). "[P]laintiffs must demonstrate standing for *each claim* that they press and for *each form of relief* that they seek," *Ramirez*, 141 S. Ct. at 2208 (emphasis added), even where "all claims for relief derive from a 'common nucleus of operative fact,'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Simply put, Plaintiffs cannot "leverage their standing to challenge" the Plan's RKA fees for purposes of challenging different fiduciary decisions concerning an investment option they never selected during the period alleged and from which they therefore suffered no cognizable injury. *See id*. at 350-51.

### B.      Plaintiffs Have Not Stated a Plausible Imprudent-Investment Claim.

In any event, Plaintiffs have not stated any plausible claim of imprudence based on allegations that the FMIP underperformed, because the Amended Complaint fails to plausibly allege: (1) the FMIP was outside the range of judgments other reasonable fiduciaries make, and (2) any "meaningful benchmarks" for the FMIP. *See* Mem. at 9-24.

The Opposition does not address the first argument or otherwise explain how a fund with $18.8 billion in assets under management could be viewed as an objectively imprudent or unreasonable investment option. *See* Mem. at 9-12. At bottom, Plaintiffs' allegations are no different from those rejected in *CommonSpirit*, where the plaintiffs alleged that a plan's "target date funds" were imprudent because other "target date funds" provided larger returns over the same period. Plaintiffs fail to identify *any* caselaw deeming allegations of underperformance alone sufficient to support an imprudence claim. Instead, Plaintiffs inexplicably cite *Johnson v. Parker-Hannifin, Corp.*, 2023 WL 8374525 (N.D. Ohio Dec. 4, 2023).[7] *See* Opp. at 17. But in that case, the court *dismissed* imprudent-investment claims precisely because "[d]isappointing performance in the near term and higher costs do not by themselves show 'deficient decision-making.'" *Id*. (quoting *Forman v. TriHealth, Inc.,* 40 F.4th 443, 449 (6th Cir. 2022). Plaintiffs cannot bury their heads in the sand. In the Sixth Circuit, mere allegations that a plan investment underperformed other available investments with some similarities cannot support a fiduciary-breach claim. *See CommonSpirit*, 37 F. 4th at 1167; *Forman*, 40 F.4th at 449. Moreover, consistent with this precedent, "courts across the country have rejected claims for breach of the fiduciary duty of

---

[7] The only case Plaintiffs cite where a court denied dismissal of an ERISA claim challenging a stable value fund as imprudent is *Disselkamp v. Norton Healthcare, Inc.*, 2019 WL 3536038, at *8 (W.D. Ky. Aug. 2, 2019) (cited in Opp. at 18). But *Disselkamp* predates the Sixth Circuit's decisions in *CommonSpirit* and *Forman,* which leave no doubt that bare-bones performance allegations do not state a claim.

prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles." *Beldock v. Microsoft Corp*, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (collecting cases). This Court should do the same.

Indeed, the Opposition all but concedes that Plaintiffs' FMIP allegations are implausible because it offers virtually no argument for how their two comparators are "meaningful benchmarks" for the FMIP. Opp. at 16-17. To do so, Plaintiffs had to allege *facts* showing that, apart from performance, their comparators are "otherwise equivalent" to the FMIP. *Forman*, 40 F.4th at 449. But Plaintiffs failed to do that in the Amended Complaint. *See* Mem. at 12-16. And their Opposition barely even tries to dispute that their comparators are *meaningless* benchmarks.[8] As explained, the MSVI is not an investment fund at all, but rather a "statistical data composite created from" other funds, and thus "could never serve as a meaningful benchmark for a real fund with unique investment strategies, goals, and asset allocations." *See Parker-Hannifin*, 2023 WL 8374525, at *6.[9] Plaintiffs do not disagree. Nor do they even try to justify their attempt to misleadingly compare the MSVI's *gross*-of-fee returns to the FMIP's *net*-of-fee returns. *See* Mem. at 14. Plaintiffs likewise have no answer for the indisputable fact that their only other comparator invests in totally different underlying assets than the FMIP, *see* Mem. at 16, confirming that the

---

[8] Unable to dispute this public information, Plaintiffs argue that the Court must ignore it. *See* Opp. at 1 n.1. But the Sixth Circuit in *CommonSpirit* and *Forman* relied on precisely the same sort of materials in affirming dismissal of the investment-performance claims in those cases. *See CommonSpirit*, 37 F.4th at 1167-68 (considering publicly available fund performance reports and prospectuses); *Forman*, 40 F.4th at 446-47 (same). Because the Sixth Circuit requires a "side-by-side comparison" of the FMIP and comparator funds to determine whether the latter are "reasonable benchmarks," *CommonSpirit*, 37 F.4th at 1167, publicly available information about each fund's "investment strategy," "risk profile," and "objective" are properly before the Court. *Id.*

[9] *See In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *9 (granting 12(b)(6) motion to dismiss claim that fund underperformed market index because the market index is not a meaningful benchmark); *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 n.4 (8th Cir. 2020) (finding that a market index listed in the ERISA plan's disclosures was not a meaningful benchmark for a breach of fiduciary duty claim because the index "is not a fund, much less an actively managed one"); *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *10 (N.D. Cal. Feb. 9, 2021) (similar).

two funds are not "otherwise equivalent" to each other, *see Forman*, 40 F.4th at 449.

In sum, Plaintiffs lack Article III standing to pursue their imprudent-investment claim, but regardless, the claim fails because the Amended Complaint alleges no facts showing that the FMIP was an imprudent investment relative to any meaningful benchmark. *See CommonSpirit*, 37 F.4th at 1167-68; *Forman*, 40 F.4th at 449; *Parker-Hannifin*, 2023 WL 8374525, at *5-8.

### III. Plaintiffs Do Not State a Claim for Breach of Duty to Monitor.

Plaintiffs concede that their separate failure-to-monitor claims in Counts III and IV are derivative of their imprudence claims above. *See* Opp. at 23. Accordingly, those derivative claims fail for the same reasons already discussed.

### CONCLUSION

For the reasons stated above and in Defendants' opening brief, the Court should grant Defendants' Motion in its entirety and with prejudice.

Respectfully submitted,

*/s/ Jared R. Killeen*
Jared R. Killeen (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA  19103
(215) 963-5000
jared.killeen@morganlewis.com

Christopher J. Boran (admitted *pro hac vice*)
Christopher B. Dempsey (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606
(312) 324-1000
christopher.boran@morganlewis.com
chris.dempsey@morganlewis.com

Michael W. Hawkins
Alina Klimkina
Dinsmore & Shohl LLP
101 South Fifth Street

14

        Suite 2500
        Louisville, KY  40202
        (502) 540-2300
        michael.hawkins@dinsmore.com
        alina.klimkina@dinsmore.com
        ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the 9th day of January 2024.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

*/s/ Jared R. Killeen*
Attorney for Defendants
