UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KENNETH DUKES et al.,     Plaintiffs,

v.     Civil Action No. 3:23-cv-313-DJH-CHL

AMERISOURCEBERGEN CORPORATION
et al.,     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kenneth Dukes, Mark A. Gale, Christine Chavis, and David R. Fly filed this purported class action against Defendants AmerisourceBergen Corporation (Amerisource), Amerisource's Board of Directors, and Amerisource's Benefits Committee, seeking to represent a class of participants and beneficiaries of the AmerisourceBergen Corporation Employee Investment Plan (the Plan) and alleging multiple breaches of fiduciary duty relating to administration of the Plan under the Employee Retirement Income Security Act (ERISA). (Docket No. 16, PageID.329 ¶ 5) Defendants move for dismissal of all claims for failure to state a claim and for dismissal of Plaintiff's stable-value-fund claim for lack of standing.[1] (D.N. 19) After careful consideration, the Court will grant in part and deny in part Defendants' motion for the reasons set forth below.

**I.     BACKGROUND**

The Court "take[s] the facts only from the complaint, accepting them as true as [it] must do in reviewing a Rule 12(b)(6) motion." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir.

---

[1] Defendants moved to dismiss Plaintiffs' original complaint on September 15, 2023. (D.N. 14) Plaintiffs subsequently amended their complaint. (D.N. 16) Defendants now move to dismiss Plaintiffs' amended complaint. (D.N. 19) As such, the Court will deny Defendants' original motion to dismiss as moot.

1

2020). Amerisource offers a "defined-contribution" pension plan to its employees, which allows participants to "direct the investment of their contributions" into various investment options. (D.N. 16, PageID.329 ¶ 3) But the Plan's fiduciaries, and not the participants themselves, select the investment options included in the Plan. (*Id.*) Amerisource is the "Plan Sponsor and a fiduciary of the Plan" (*id.*, PageID.329 ¶ 4), and acting "through its officers, including its Board of Directors," performs Plan-related fiduciary functions such as appointment of the Plan's Benefits Committee. (*Id.*, PageID.336 ¶ 48) The Benefits Committee, in turn, oversees the "day-to-day administration and operation of the Plan" and has authority over the Plan's control, management, and administration. (*Id.*, PageID.336 ¶ 49) As part of this oversight, the Benefits Committee selects a "recordkeeper[]" to provide "bundled service offerings" to the Plan. (*Id.*, PageID.337 ¶ 53) Recordkeepers provide the following services: (1) "Bundled RKA" services including recordkeeping, transaction processing, and administrative services, which are charged to plans equally per plan participant per year (*id.*, PageID.337–39 ¶¶ 56–65); (2) "A La Carte services" including loan processing, brokerage services, and distribution services that come with separate, additional fees based on the conduct of individual plan participants (*id.*, PageID.340 ¶¶ 66–67); and (3) "Ad Hoc fees," including transaction fees and other administrative fees, which are paid by plans in a standardized manner. (*Id.*, PageID.340 ¶ 68–69) During the class period, the Benefits Committee retained Fidelity Investments Institutional (Fidelity) to serve as the Plan's recordkeeper.[2] (*Id.*, PageID.329 ¶ 6)

According to Plaintiffs, "[t]here are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to mega defined contribution plans like [the

---

[2] Plaintiffs allege a putative class period of June 9, 2017, through the date of judgment. (D.N.16, PageID.332 ¶ 17)

Plan]." (*Id.*, PageID.337 ¶ 54) Indeed, Plaintiffs allege that recordkeeping services "are essentially fungible and the market for them is highly competitive." (*Id.*, PageID.339 ¶ 64) In support, Plaintiffs point to Fidelity's stipulation of facts in a previous case where Plaintiffs allege Fidelity admitted that "the total RKA services . . . [Fidelity] provides to mega plans are commodified."[3] (*Id.*, PageID.342 ¶ 77) Additionally, Plaintiffs claim that "[s]ince well before 2015, industry experts have maintained that for mega-retirement plans like the [Plan], prudent fiduciaries treat Bundled RKA services as a commodity with little variation in price." (*Id.*, PageID.339 ¶ 62)

Plaintiffs further allege that the Defendants had "enormous bargaining power regarding Plan fees and expenses," (*id.*, PageID.336 ¶ 50), because "with $1,917,838,771 in assets in 2021, the Plan had more assets than 99.91% of the defined contribution Plans in the United States that filed 5500 forms" that year. (*Id.*, PageID.336 ¶ 51) And this bargaining power was magnified, Plaintiffs assert, because "[w]ith 23,688 participants in 2021, the Plan had more participants than 99.94% of the defined contribution Plans in the United States that filed 5500 forms" that year. *Id.* According to Plaintiffs, "the more participants a plan has," the lower fee-per-participant the recordkeeper can accept "to provide materially identical RKA services [and] maintain the same

---

[3] Defendants argue that Plaintiffs' interpretation of the Fidelity stipulation "makes no sense" and that the Court must ignore it because "Fidelity has since clarified the stipulation." (D.N. 19, PageID.407–08) Defendants proceed to cite multiple cases where "courts have rejected identical arguments that the Fidelity stipulation supports excessive-RKA-fee claims." (*Id.*, PageID.408 (citing *Mateya v. Cook Grp. Inc.*, No. 1:22-cv-01271-RLY-TAB, 2023 U.S. Dist. LEXIS 124838, at *6 (S.D. Ind. June 16, 2023); *Fritton v. Taylor Corp.*, No. 22-cv-00415 (ECT/TNL), 2022 U.S. Dist. LEXIS 222996, at *6 (D. Minn. Dec. 12, 2022); *Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 U.S. Dist. LEXIS 26227, at *8 (N.D. Cal. Feb. 9, 2021))) None of the authorities cited by Defendants are binding on the Court, and in any event, this argument is not properly considered at the motion-to-dismiss stage, where the well-pleaded allegations in Plaintiffs' complaint must be taken as true and all inferences must be drawn in the plaintiffs' favor. *See Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

profit margin rate." (*Id.*, PageID.337 ¶ 55)  And Plaintiffs allege that "Fidelity has stated in the past that it relies on both participant-size and plan asset-size to make appropriate comparisons between plans." (*Id.*)

Plaintiffs claim that the Benefits Committee's decision to hire Fidelity as the Plan's recordkeeper violated the fiduciary duty of prudence because Defendants "paid over a 114% premium-per-participant for Total RKA fees for the Plan to [Fidelity] . . . during the class period, compared to what a reasonable fee should have been for materially similar RKA services."[4] (*Id.*, PageID.329–30 ¶ 6)  The Plan paid "$48 per participant per year" to Fidelity for Bundled RKA services from 2017-2021, $42 per participant per year in 2022, and $36 per participant per year in 2023.  (*Id.*, PageID.339 ¶ 61)  In addition, the Plan paid "between $11 and $15" for combined A la Carte and Ad Hoc RKA fees to Fidelity during the class period (*id.*, PageID.340 ¶ 70), for "an effective average annual Total RKA fee of $60 per participant."  (*Id.*, PageID.346 ¶ 102)  According to Plaintiffs, several similarly situated mega defined-contribution plans paid substantially less for materially equivalent recordkeeping services during the same period.  (*Id.*, PageID.347 ¶ 103; *see id.*, PageID.350–355 ¶¶ 118–138)  In fact, Plaintiffs contend, "the Plan paid 214% more than what they should have paid for Total RKA [services] during the Class Period" as compared to similarly situated defined-contribution plans.  (*Id.*, PageID.349 ¶ 109)  In sum, Plaintiffs allege that Defendants acted imprudently by "fail[ing] to take advantage of the Plan's enormous size to timely negotiate lower fees" from Fidelity (*id.*, PageID.357 ¶ 147) even though

---

[4] Defendants argue at length that Plaintiffs' fee calculations are implausible because they (1) only consider "direct compensation paid by the plan" and not "any additional amounts paid by the employer," (2) "largely ignore[] the indirect compensation received by the comparator plans' recordkeepers," and (3) are "render[ed] . . . meaningless" by the inclusion of A la Carte and Ad Hoc fees.  (D.N. 19, PageID.408–11)  As explained more fully in part II.B below, however, such arguments go to the weight of Plaintiffs' evidence and are not properly considered at the motion-to-dismiss stage.  *See Tackett*, 561 F.3d at 488.

they "could have obtained the same Total RKA services for less from other recordkeepers or from Fidelity itself had [the Plan] only leveraged its mega size." (*Id.*, PageID.357 ¶ 148)

Plaintiffs further allege that Defendants violated the fiduciary duty of prudence by selecting the Fidelity Managed Income Portfolio (FMIP) stable-value fund for inclusion in the Plan. (*Id.*, PageID.363 ¶ 182) In support, Plaintiffs point to the Morningstar US CIT Stable Value Index (MSVI), which is frequently used by "[p]rudent fiduciaries" (*id.*, PageID.359 ¶ 162) and "serves as a benchmarking tool for stable-value asset managers and provides insight into stable-value market trends." (*Id.*, PageID.359 ¶ 163) According to Plaintiffs, the FMIP "consistently underperformed the MSVI for several years both prior to and throughout the class period" by a total of $3,557,467. (*Id.*, PageID.360 ¶ 165) Additionally, Plaintiffs allege that another stable-value fund, the T. Rowe Price Stable Value N (TRPN), provides a "sound basis of comparison for purposes of showing that the Plan overpaid for FMIP" (*id.*, PageID.360 ¶ 166) because each fund "follows a similar investment strategy and similar implementation" of that strategy (*id.*, PageID.360 ¶ 167), "invests in similar vehicles" (*id.*, PageID.360 ¶ 168), has "similar management fee levels for the share classes in question" (*id.*, PageID.361 ¶ 170), has "sizable assets under management" of around $20 billion (*id.*, PageID.361 ¶ 171), and is "low-duration." (*Id.*, PageID.361 ¶ 173) Plaintiffs claim that despite this similarity, "the FMIP was consistently more expensive by many millions of dollars as compared to the alternative TRPN stability option both prior to, and throughout, the Class Period." (*Id.*, PageID.361 ¶ 174) Finally, Plaintiffs allege that "[h]aving selected a stable value option for the stability requirement for the plan, there are no other considerations under modern portfolio theory[] . . . that reasonably warrant the selection and retention of the FMIP over less expensive stable value options like the TRPN throughout the class period." (*Id.*, PageID.362 ¶ 175) Thus, Plaintiffs contend that "the FMIP was an imprudent

5

investment which should have been removed by the Plan" and that Defendants violated their duty of prudence by not doing so. (*Id.*, PageID.363 ¶ 179)

Plaintiffs allege ERISA violations across four counts. (*Id.*, PageID.366–72 ¶¶ 196–234). Count I alleges violation of the duty of prudence by the Benefits Committee for selecting Fidelity as the Plan's recordkeeper despite its disproportionately large RKA fees; Count II alleges violation of the duty of prudence by the Benefits Committee for including the disproportionately expensive and underperforming FMIP stable-value fund in the Plan; and Counts III and IV allege violations of the duty to adequately monitor the Benefits Committee by the remaining defendants with respect to Counts I and II. (*Id.*) Defendants move to dismiss all counts for failure to state a claim and to dismiss Count II for lack of standing. (D.N. 19, PageID.387–89) The Court addresses each argument below.[5]

## II.   ANALYSIS

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" will not withstand a motion to dismiss. *Id.* at 679.

---

[5] The parties have provided multiple notices of supplemental authority to the Court for the purpose of deciding the present motion. (D.N. 25; D.N. 26; D.N. 27; D.N. 36) The Court has considered each notice accordingly.

When considering a motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett*, 561 F.3d at 488 (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

Generally, courts may consider only the factual allegations in the pleadings when deciding a motion to dismiss. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). If matters outside the pleadings are presented on a motion to dismiss and not expressly excluded by the Court, the Court must treat the motion as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *see also Bates*, 958 F.3d at 483. There are a few exceptions, however: courts may consider documents attached to the complaint, documents attached to the motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein," and public records without converting the motion to dismiss to a motion for summary judgment. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).

At the outset, the parties dispute the extent to which the Court should consider documents attached to Defendants' motion to dismiss. (*See* D.N. 20, PageID. 614–18; D.N. 19, PageID.389 n.2) On one hand, Plaintiffs' claims clearly rely on publicly available documents attached to Defendants' motion, such as several Form 5500s filed by Plaintiffs' alleged comparison plans. (D.N. 16, PageID.102 ¶ 102) On the other, the Court is cognizant that highly detailed factual disputes about Plaintiffs' fee calculations and comparisons to other plans are not properly considered at the motion-to-dismiss stage. *See Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1063 (M.D. Tenn. 2018) ("The question [of] whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss."); *id.* at 1066 ("Whether fees are unreasonable is an issue that should be taken up at summary judgment.") (citations omitted). As such, the Court will consider those documents

"referred to in the complaint and . . . central to the claims contained therein," *Rondigo*, 641 F.3d at 680–81, such as the Form 5500s, but will otherwise exclude materials outside the pleadings and assume the truth of Plaintiffs' well-pleaded factual allegations, as must be done at this stage of the proceedings. *See Tackett*, 561 F.3d at 488 (citation omitted).

A.      **Duty of Prudence — Stable-Value Fund**

Plaintiffs allege that the Benefits Committee breached its fiduciary duty of prudence by failing "to evaluate the cost of the Plan's investments critically or objectively in comparison to other more reasonable alternative investments." (D.N. 16, PageID.369 ¶ 216) Specifically, Plaintiffs claim that the Benefits Committee "selected and retained for years as Plan investment options an unreasonable stable value fund[, the FMIP fund,] when other materially identical investment options were readily available to the Plan at all relevant times." (*Id.*) Defendants argue that Plaintiffs lack Article III standing to pursue this claim and that in any event, dismissal is warranted because Plaintiffs' allegations are implausible. (D.N. 19, PageID.392–402) As explained below, the Court agrees that Plaintiffs lack standing to pursue this claim.[6]

1.      **Rule 12(b)(1)**

As a threshold matter, Plaintiffs bear the burden of establishing standing. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). To establish standing, Plaintiffs must show that (1) they have suffered an "injury in fact"; (2) that the injury is fairly traceable to the actions of the defendants; and (3) that the injury will likely be redressed by a favorable decision. *Id.* (citing *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606–07 (6th Cir. 2007)). An injury in fact is "an invasion of a legally

---

[6] In light of this conclusion, the Court need not consider Defendants' argument that the stable-value-fund claim is insufficiently pleaded.

8

protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). In the absence of a cognizable injury in fact, the Court must dismiss the case for lack of subject-matter jurisdiction. *Id.* at 583. But where there is a facial attack on the pleadings for lack of standing, the Court "must accept the allegations set forth in the complaint as true, drawing all inferences in favor of the plaintiff." *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) (quoting *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579 (6th Cir. 2014)).

ERISA claims for breach of fiduciary duty under § 1132(a)(2) and § 1109 are brought on behalf of the plan itself. *See Loren*, 505 F.3d at 608 ("Plaintiffs cannot bring suit under § 1132(a)(2) to recover personal damages for misconduct, but rather must seek recovery on behalf of the plan."). But injury to the plan itself is not sufficient to satisfy Article III—"[m]erely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing." *Id.* Although ERISA provides a right of action for plan beneficiaries, the Supreme Court "has rejected the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Thole v. U. S. Bank N.A*, 590 U.S. 538, 544 (2020) (quoting *Spokeo*, 578 U.S. at 341). "There is no ERISA exception to Article III," *id.* at 547, and "even where statutory standing pursuant to ERISA is satisfied, the elements of Article III must be met." *Loren*, 505 F.3d at 606–07 (6th Cir. 2007) (citation omitted). Moreover, standing is not dispensed "in-gross"—Plaintiffs "must prove standing's elements for each claim and remedy," and "their standing to bring one claim does not create standing to bring another one." *Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022).

Defendants argue that Plaintiffs "suffered no injury related to the [FMIP] fund" and therefore lack an injury in fact. (D.N. 19, PageID.393)  In particular, Defendants assert that because the sole plaintiff who invested in the FMIP, Mark Gale, did not do so until October 5, 2023, "he could not have suffered any financial injury from the allegedly subpar returns that Plaintiffs complain about" from 2017 to 2022. (*Id.*, PageID.388)  Moreover, Defendants assert that even if Gale were to allege potential injury from his FMIP investment moving forward, "allegations of possible future injury are not sufficient" to demonstrate an injury in fact under Article III." (*Id.*, PageID.394 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)))  Plaintiffs respond that "Gale has been invested in the FMIP fund for over two months now, he has suffered harm now . . . based on the excessive fees charged by that Fund like many other Plan participants, and Plaintiffs' claims are not limited to 2022 but go through the date of judgment." (D.N. 20, PageID.607)  Defendants reply that the complaint "offers zero allegations that Gale has suffered any injury arising from his last-minute investment in the FMIP." (D.N. 23, PageID.639)

The Court agrees that Plaintiffs have failed to allege a cognizable injury-in-fact as to the FMIP fund.  Plaintiffs do not dispute that Gale is the only named plaintiff who invested in the FMIP fund, or that he did not do so until October 5, 2023. (*See* D.N. 19, PageID.392–95; D.N. 20, PageID.607–10)  But Plaintiffs' complaint only asserts that the FMIP fund underperformed between 2012 and 2022. (D.N. 16, PageID.360 ¶ 165; *id.*, PageID.362 ¶ 174)  As Defendants correctly observe, the complaint says nothing about the fund's performance in 2023 and beyond, after Gale first invested. (*See generally* D.N. 16; D.N. 19, PageID.394)  Thus, Plaintiffs have not plausibly alleged that Gale suffered an injury in fact from the FMIP fund's alleged underperformance.  Gale's individual defined-contribution plan was unaffected by the fund's underperformance prior to his investment in 2023, and the complaint only alleges that the fund

10

underperformed between 2012 and 2022. (D.N. 16, PageID.360 ¶ 165; *id.*, PageID.362 ¶ 174) Moreover, Plaintiffs' claim that Gale "has suffered harm now, not in the future," (D.N. 20, PageID.607) is wholly conclusory and insufficient to demonstrate Article III standing. *Glennborough Homeowners Ass'n v. United States Postal Serv.*, 21 F.4th 410, 414 (6th Cir. 2021) (noting that a party "cannot rely on general or conclusory allegations in support of its standing, but instead must assert a plausible claim for why it has standing to pursue" its claims). Because Plaintiffs have not sufficiently alleged a constitutionally cognizable injury in fact as to their stable-value-fund claim, that claim must be dismissed.[7]

## B.   Duty of Prudence — Total RKA Fees

Plaintiffs also allege that the Benefits Committee breached its fiduciary duty of prudence by failing to "ensure that the Plan's total RKA fees were objectively reasonable" (D.N. 16, PageID.366 ¶ 201) and "regularly monitor and evaluate the Plan's recordkeeper, Fidelity, to make sure it was providing the Total RKA services at reasonable costs." (*Id.*, PageID.367 ¶ 202) Defendants contend that this claim should be dismissed under Rule 12(b)(6) because Plaintiff's allegations rely on implausible and inaccurate fee comparisons and lack factual content sufficient to imply an imprudent fiduciary process. (D.N. 19, PageID.402–11)

---

[7] As a final attempt to salvage this claim, Plaintiffs argue that ERISA litigants are authorized to seek relief "that sweeps beyond their own injuries." (D.N. 20, PageID.610)  It is true that "[c]ourts have recognized that a plaintiff who is injured in his or her own plan assets—and thus has Article III standing—may proceed under Section 1132(a)(2) on behalf of the plan or other participants even if the relief sought sweeps beyond his own injury." *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-2086, 2018 U.S. Dist. LEXIS 181850, at *6–7 (M.D. Tenn. Oct. 23, 2018) (citing *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998); *Clark v. Duke Univ.*, 2018 U.S. Dist. LEXIS 62532, 2018 WL 1801946 at *4 (M.D. N.C. Apr. 13, 2018); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009)).  Again, however, "[t]here is no ERISA exception to Article III," and therefore Plaintiffs' lack of injury in fact dooms their claim.  *See Thole*, 590 U.S. at 547.

11

Congress enacted ERISA to protect participants in employee benefit plans by establishing standards of conduct for plan fiduciaries. 29 U.S.C. § 1001(b). Thus, ERISA requires plan administrators to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" to satisfy their fiduciary duties and avoid liability. 29 U.S.C. § 1104(a)(1)(B). Because an ERISA fiduciary's duty is derived from the common law of trusts, courts apply "[b]edrock trust principles" when considering ERISA claims, including that "[w]hether the trustee is prudent in the doing of an act depends upon the circumstances as they reasonably appear to him at the time when he does the act and not at some subsequent time when his conduct is called into question." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164 (6th Cir. 2022) (quoting Restatement (Second) of Trusts § 174 cmt. b (Am. L. Inst. 1959)). Thus, when determining the plausibility of Plaintiffs' imprudence claim, the Court must engage in a "context specific" inquiry and "give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *CommonSpirit*, 37 F.4th at 1165 (citations omitted).

In particular, the Court must determine whether Plaintiffs have plausibly alleged that the fees charged to the Plan "were high in relation to the services that the [P]lan provided." *Forman*, 40 F.4th at 449 (citing *CommonSpirit*, 37 F.4th at 1169). To meet this bar, Plaintiffs allege that recordkeeping services provided to mega defined-contribution pension plans are commoditized and "essentially fungible" (D.N. 16, PageID.339 ¶¶ 63–64) and that comparable "mega [sized plans] in 2018[] receiv[ed] a materially similar level and quality of Total RKA services" despite paying substantially less than the Plan in total recordkeeping fees. (*Id.*, PageID.347 ¶ 103)

12

As Defendants point out, however, there are numerous potential problems with these claims. (D.N. 19, PageID.402–11)  First, the Form 5500 documents on which Plaintiffs rely (D.N. 16, PageID.346 ¶¶ 102–03) clearly demonstrate that "the services that the [comparison] plan[s] provided" were materially different than the services provided by the Plan.  *See Forman*, 40 F.4th at 449.  Each Form 5500 displays a service code that reflects specific categories of services for which the recordkeeper was paid during the relevant year.  However, a review of the forms reveals that the services selected by the Plan are distinct from the services selected by the alleged comparison plans.  For example, the Plan's Form 5500 for 2018 identifies service codes 25, 37, 64, 65, 71, and 50.  (D.N. 19-1, PageID.420)  But the Form 5500 for one of Plaintiffs' comparison plans, the FedEx Office and Print Services Plan, displays service codes 15, 25, 50, 16, 26, 52, 21, 37, and 57.  (D.N. 19-8, PageID.482)  There are similar disparities between the Plan and each of the comparison plans offered by Plaintiffs.  (*See* D.N. 19-1, PageID.420; D.N. 19-7–19-12, PageID.453–585)   These disparities suggest that "the particular services provided by the recordkeepers were not all the same," making it "difficult to make a fair comparison" between the fees paid by the Plan and the fees paid by Plaintiffs' comparison plans.  *Miller v. Packaging Corp. of Am., Inc.*, No. 1:22-cv-271, 2023 U.S. Dist. LEXIS 55337, at *16 (W.D. Mich. Mar. 30, 2023) (dismissing imprudent-RKA-fee claim that failed to plausibly allege that recordkeeping fees were high in relation to the services provided); *see Sigetich v. Kroger Co.*, No. 1:21-cv-697, 2023 U.S. Dist. LEXIS 40359, at *22–26 (S.D. Ohio Mar. 9, 2023) (same).

But as Plaintiffs correctly note, these disparities are not fatal to their imprudence claim. (D.N. 20, PageID.605)  Defendants contend that the service-code disparities "confirm[] the implausibility of Plaintiffs' allegations that the RKA services the AB Plan received are necessarily equivalent to those received by their alleged comparator plans." (D.N. 19, PageID.406)  But

13

Plaintiffs allege that "recordkeeping services are fungible or commoditized" and therefore that "any differences in [the] Bundled RKA services [provided] are immaterial to the price quoted by recordkeepers for such services." (D.N. 20, PageID.597) And although courts have dismissed imprudence claims premised on wholly conclusory allegations that services selected do not meaningfully affect the price of recordkeeping for large plans, *see, e.g.*, *Probst v. Eli Lilly & Co.*, No. 1:22-cv-01106-JMS-MKK, 2023 U.S. Dist. LEXIS 19172, at *33–34 (S.D. Ind. Feb. 3, 2023) (collecting cases), Plaintiffs' allegations are more than wholly conclusory. In particular, Plaintiffs allege that "[s]ince well before 2015, industry experts have maintained that for mega retirement plans like the AmerisourceBergen Plan, prudent fiduciaries treat Bundled RKA services as a commodity with little variation in price." (D.N. 16, PageID.339 ¶ 62 (citing Eric Droblyen, *Evaluating 401(k) Providers: Separating Commodity from Value-Added Services*, https://www.employeefiduciary.com/blog/evaluating-401k-providers-separating-commodity-value-added-services (Feb. 10, 2015))) Moreover, Plaintiffs point to a stipulation by Fidelity in a previous case in which Fidelity purportedly conceded that "the total RKA services that [Fidelity] provides to mega plans are commodified."[8] (*Id.*, PageID.342 ¶ 77) Of course, the ultimate truth of this debate is far from settled. But having been presented with "[e]qually reasonable inferences" concerning the fungibility and pricing of RKA services, the Court has "no basis for crediting one set of reasonable inferences over the other" at the motion-to-dismiss stage and cannot dismiss Plaintiffs' claim on this point. *See Forman*, 40 F.4th at 450 (citation omitted).

Defendants further argue that Plaintiffs' fee calculations are implausible because they (1) only consider "direct compensation paid by the plan" and not "any additional amounts paid by the

---

[8] As noted in footnote 3 above, Defendants' argument regarding the proper interpretation of this stipulation is not properly considered at the motion-to-dismiss stage. *See Tackett*, 561 F.3d at 488 (6th Cir. 2009).

employer," (2) "largely ignore[] the indirect compensation received by the comparator plans' recordkeepers," and (3) are "render[ed] . . . meaningless" by the inclusion of A la Carte and Ad Hoc fees. (D.N. 19, PageID.408–11)  Although courts within this circuit have occasionally considered such attacks on plaintiffs' fee calculations at the motion-to-dismiss stage, *see, e.g.*, *Miller*, 2023 U.S. Dist. LEXIS 55337, at *18 (noting that the plaintiffs' calculations "did not account for indirect compensation to the recordkeeper"), such arguments go to the weight of the evidence and are not properly considered at the motion-to-dismiss stage.  *See Tackett*, 561 F.3d at 488; *see also, e.g.*, *Glick v. ThedaCare, Inc.*, No. 20-CV-1236-WCG-SCD, 2023 WL 9327209, at *5–6 (E.D. Wis. July 20, 2023), report and recommendation adopted, No. 20-C-1236, 2024 WL 233370 (E.D. Wis. Jan. 22, 2024).  Plaintiffs have provided detailed methodology to explain how they arrived at the RKA fee totals used to support their imprudence claim.  (D.N. 16, PageID.341 ¶ 73)  Defendants will have ample opportunity to dispute the accuracy of these calculations at the summary-judgment stage.

Finally, Defendants argue that the six comparator plans cannot support an allegation of imprudence because "[t]here are thousands of plans in the marketplace, so an allegation that the Plan paid more than six others in 2018 alone says nothing about the reasonableness of the fees paid for the specific services the Plan received, let alone the process the Committee used to evaluate them."  (D.N. 19, PageID.403)  But Defendants cite no authority suggesting that there is a specific number of comparison plans that must be alleged to support an imprudence claim (*see generally id.*), and the Court is aware of none.  On the contrary, courts in this circuit have allowed imprudence claims to proceed based on comparisons like those alleged by Plaintiffs here.  *See, e.g.*, *Peck v. Healthcare*, No. 1:22-cv-294, 2022 U.S. Dist. LEXIS 217086, at *9–17 (W.D. Mich. Nov. 9, 2022); *Moore v. Humana, Inc.*, Civil Action No. 3:21-cv-232, 2022 U.S. Dist. LEXIS

15

238430, at *10–12 (W.D. Ky. Mar. 30, 2022); *see also Moore*, Civil Action No. 3:21-cv-232, D.N. 17, PageID.94 ¶ 72 (alleging four comparison plans).  And although Defendants further argue in their reply that the comparator plans provided by Plaintiffs are not "meaningful benchmark[s]" as required by the Sixth Circuit in *CommonSpirit* (D.N. 23, PageID.637 (citing *CommonSpirit*, 37 F.4th at 1167)), the Court declines to consider arguments raised for the first time in a reply brief to which Plaintiffs cannot meaningfully respond.  *See Bennett v. Bascom*, 788 F. App'x 318, 323–24 (6th Cir. 2019) (noting that courts "generally do not permit arguments to be raised for the first time in a reply brief" because "reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration").  Moreover, Plaintiffs have alleged that the size and assets of the Plan gave it "enormous bargaining power" to obtain lower RKA fees during the class period but that it nevertheless failed to pursue them, a claim that supports a reasonable inference of imprudence at this stage of the proceedings.  (D.N. 16, PageID.336 ¶ 50; *id.*, PageID.357 ¶ 147-49)  After all, other courts have deemed similar allegations sufficient at the motion to dismiss stage.  *See, e.g.*, *Moore*, 2022 U.S. Dist. LEXIS 238430, at *10–13 (denying motion to dismiss where plaintiffs alleged "the Plan had over 48,000 participants, over $3.4 billion in assets, and a $37 fee per participant, and that plans with less participants negotiated lower fees" and collecting cases).

In sum, Plaintiffs have plausibly alleged that the Plan overpaid for RKA services during the class period and that the Benefits Committee failed to act as a prudent fiduciary.  *See, e.g.*, *Peck*, 2022 U.S. Dist. LEXIS 217086, at *9–17; *Moore*, 2022 U.S. Dist. LEXIS 238430, at *10–12.  Although Defendants' arguments as to Plaintiffs' calculations, comparisons, and claims about the fungible nature of RKA services may prove persuasive later in the litigation, at this stage the Court must accept the well-pleaded allegations of Plaintiffs' complaint as true and resolve all

inferences in their favor. *See Tackett*, 561 F.3d at 488; *Cassell*, 285 F. Supp. 3d at 1063, 1066. Moreover, the Court is sensitive to the fact that "[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences . . . . [and that i]f plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." *Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2021 U.S. Dist. LEXIS 62106, at *15–16 (E.D. Mich. Mar. 31, 2021) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)). Because both sides have presented plausible arguments, the Court has "no basis for crediting one set of reasonable inferences over the other," and Defendants' motion to dismiss Plaintiffs' RKA-fee claim must be denied. *See Forman*, 40 F.4th at 450.

**C.      Failure to Monitor**

Finally, Defendants move to dismiss Plaintiffs' derivative claims on the ground that those claims "can survive only if Plaintiffs' predicate claim[s] in Counts I and II are plausible." (D.N. 19, PageID.411)  Alternatively, Defendants argue that Plaintiffs' derivative claims are deficient on their own terms because they "rest entirely on legal conclusions, without any factual allegations about AB's or the Board's process for monitoring the Committee, or how that process was deficient." (*Id.* (citations omitted))  In response, Plaintiffs maintain that they have sufficiently pleaded both their predicate claims and their derivative failure-to-monitor claims. (D.N. 20, PageID.618)

As explained above, Plaintiffs' stable-value-fund claim must be dismissed for lack of standing. It thus cannot serve as the basis for a derivative claim, and so its derivative failure-to-monitor claim must be dismissed as well. *See, e.g.*, *Sims v. First Horizon Nat'l Corp.*, No. 08-

17

2293-STA-cgc, 2009 U.S. Dist. LEXIS 90449, at *93–94 (W.D. Tenn. Sep. 30, 2009) (dismissing derivative ERISA failure-to-monitor claims where the predicate claims failed as a matter of law); *see also Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2023 U.S. Dist. LEXIS 97323, at *22 (E.D. Mich. June 5, 2023) ("[D]istrict courts within the Sixth Circuit 'have held that a failure to monitor claim does not survive absent a predicate breach of fiduciary duty by a monitored fiduciary'") (citation omitted); *Johnson v. Disability*, No. 22-10327, 2023 U.S. Dist. LEXIS 26580, at *22–23 (E.D. Mich. Feb. 16, 2023) (explaining that "most courts treat a duty to monitor claim as deriving from a successful claim of a breach of fiduciary duty" and collecting cases) (citation omitted).

Plaintiffs' failure-to-monitor claim pertaining to RKA fees merits further scrutiny. Courts recognize that "[t]he power to appoint and remove trustees carries with it the concomitant duty to monitor those trustees' performance" and that "[t]he duty to monitor carries with it . . . the duty to take action upon discovery that the appointed fiduciaries are not performing properly." *Johnson*, 2023 U.S. Dist. LEXIS 26580, at *22–23 (quoting *Stockwell v. Hamilton*, 163 F. Supp. 3d 484, 491 (E.D. Mich. 2016)). In support of their failure-to-monitor claim, Plaintiffs allege that Amerisource and the Amerisource Board "had the authority to appoint and remove members or individuals responsible for Plan Total RKA fees on the Benefits Committee" (D.N. 16, PageID.370 ¶ 222) but "fail[ed] to monitor and evaluate the performance" of the Benefits Committee (*id.*, ¶ 225(a)) and the "process by which the Plan's recordkeeper, Fidelity, was evaluated" (*id.*, PageID.370–71, ¶ 225(b)); "fail[ed] to investigate the availability of more reasonably-priced recordkeepers" (*id.*, PageID.371, ¶ 225(b)); and "[f]ail[ed] to remove individuals responsible for Plan Total RKA fees on the Benefits Committee whose performance was inadequate." (*Id.*, PageID.371, ¶ 225(c))

These allegations are sufficient at the motion-to-dismiss stage. As discussed above, Plaintiffs have plausibly alleged that the Plan paid "214% more than what they should have paid for Total RKA [services] during the Class Period" as compared to similarly situated defined-contribution plans. (*Id.*, PageID.349 ¶ 109) Given that Amerisource and the Amerisource Board had the power to oversee and remove members of the Benefits Committee (*id.*, PageID.370 ¶ 222), the allegation that they failed to do so even though they were paying substantially more in RKA fees than other similarly situated plans (*id.*, PageID.347 ¶ 103; *see id.*, PageID.350–55 ¶¶ 118–38), supports a plausible inference that they violated their fiduciary duty to monitor the Benefits Committee's performance. *See, e.g.*, *Moore*, 2022 U.S. Dist. LEXIS 238430, at \*12–13 ("Because Plaintiffs' breach of fiduciary duty claim remains, their failure to adequately monitor other fiduciaries claim remains as well."). Defendants' motion to dismiss Plaintiffs' derivative failure-to-monitor claim regarding excessive RKA fees will therefore be denied.

### III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendants' motion to dismiss Plaintiffs' original complaint (D.N. 14) is **DENIED** as moot.

(2) Defendants' motion to dismiss Plaintiffs' amended complaint (D.N. 19) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to Counts II and IV. The motion is **DENIED** as to Counts I and III. Count I will proceed against the Benefits Committee and Count III will proceed against the remaining defendants.

(3) The Court requests that Magistrate Judge Colin H. Lindsay (D.N. 5) schedule a status conference within 30 days of the entry of this Memorandum Opinion and Order to set a final litigation schedule, to include a settlement conference.

September 24, 2024

David J. Hale, Judge
United States District Court