UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KENNETH DUKES et al.,                                                                                    Plaintiffs,

v.                                                                            Civil Action No. 3:23-cv-313-DJH-CHL

AMERISOURCEBERGEN CORPORATION
et al.,                                                                                                 Defendants.

\* \* \* \* \*

**MEMORANDUM AND ORDER**

On August 29, 2025, the Court preliminarily approved the class-action settlement in this matter. (Docket No. 67) In the same Order, the Court conditionally certified the class for settlement purposes; appointed class counsel and the settlement administrator; and approved the notice and opt-out and claim forms to be sent to class members. (*Id.*) In two unopposed motions, Plaintiffs Kenneth Dukes, Mark A. Gale, Christine Chavis, and David Fly now move for final approval of attorney fees and incentive payments to class representatives and final approval of the settlement. (D.N. 68; D.N. 71) No class member has objected to the fairness of the settlement. (D.N. 71-5, PageID.1109 ¶ 15) The Court held a final fairness hearing on November 7, 2025, and heard from the parties in support of the settlement. (D.N. 72) The claims administrator reports that "out of 53,362 Notices [sent to class members], only 92 (0.17%) were ultimately undeliverable." (*Id.*, PageID.1108 ¶ 12) After careful consideration, the Court will grant Plaintiffs' motions for the reasons explained below.

**I.**

Plaintiffs filed this class action against AmerisourceBergen Corporation (Amerisource), Amerisource's Board of Directors, and Amerisource's Benefits Committee, alleging that the defendants breached their fiduciary duties relating to administration of an Employee Investment

1

Plan (the Plan).  (*See* D.N. 16)  Defendants moved to dismiss the initial complaint (D.N. 14), after which Plaintiffs filed an amended complaint.  (D.N. 16)  The amended complaint asserts four claims for relief: (1) breach of the duty of prudence based on failure to ensure that the Plan's recordkeeping and administrative (RKA) fees were objectively reasonable; (2) breach of the duty of prudence based on failure to ensure that the Plan's stable-value-fund fees were objectively reasonable; (3) failure to monitor predicated on the RKA fees; and (4) failure to monitor predicated on the stable-value-fund fees.  (*Id.*)  Defendants moved to dismiss the amended complaint as well.  (D.N. 19)  The Court granted the motion in part, dismissing the two claims based on the stable-value-fund fees.  (*See* D.N. 37)  On February 19, 2025, the parties "reached a settlement in principle" after a "day-long mediation before JAMS mediator Robert A. Meyer."  (D.N. 45, PageID.827 ¶¶ 3–4)

In its August 29 Memorandum and Order, the Court conditionally certified the following class for settlement purposes:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a [Qualified Domestic Relations Order] who participated in the Plan at any time during the Class Period.

(D.N. 67, PageID.1024)  The class period is from June 20, 2017, through August 29, 2025.  (*See* D.N. 49-1, PageID.868; D.N. 67)

The proposed final settlement totals $625,000.00.  (D.N. 49-1, PageID.869 § 1.25)  That sum includes payments to individual class members; attorney fees and costs; incentive payments to the named plaintiffs; taxes; and fees for administration of the settlement and an independent fiduciary review of the settlement's terms.  (*See id.*, PageID.867–869 §§ 1.3, 1.5, 1.10, 1.25)  Class

2

members will release claims against the defendants arising out of the allegations made in this case.

(*See id.*, PageID.870–72, 877–78 §§ 1.38, 3.1.4)

## II.

**A.     Approval of Settlement**

Pursuant to Federal Rule of Civil Procedure 23, the Court may approve a class-action settlement "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate" based on the following factors:

> (A)     the class representatives and class counsel have adequately represented the class;
> (B)     the proposal was negotiated at arm's length;
> (C)     the relief provided for the class is adequate, taking into account:
>     (i)     the costs, risks, and delay of trial and appeal;
>     (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The rule largely encompasses the factors employed by the Sixth Circuit:

> (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

*Does 1-2 v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (internal quotation marks omitted) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  In addition to the seven factors listed above, the Sixth Circuit "look[s] to whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'"  *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983)).  The Court considers both sets of

factors below. *See Feezle v. Norfolk S. Ry. Co. (In re E. Palestine Train Derailment)*, 158 F.4th 704, 713 (6th Cir. 2025).

### 1. Adequate Representation/Amount of Discovery/Counsel and Representatives' Opinions

This case has been litigated since June 2023 (D.N. 1), including both substantial motion practice (*see* D.N. 14; D.N. 16; D.N. 19; D.N. 20; D.N. 23; D.N. 25; D.N. 26; D.N. 27; D.N. 36) and initial discovery (*see* D.N. 41; D.N. 49, PageID.859 ¶ 9), and class counsel have extensive experience in similar ERISA litigation. (D.N. 49, PageID.860–64 ¶¶ 12–27) Thus, these factors and the opinions of counsel and the class representatives, all of whom favor the settlement, support final approval. *See Does*, 925 F.3d at 899.

### 2. Arm's-Length Negotiations/Risk of Fraud or Collusion

"The involvement of a third-party mediator and adversarial litigation with substantial discovery are factors indicating an absence of collusion." *In re Amazon.com, Inc. Fulfillment Ctr. Fair Labor Standards Act and Wage and Hour Litig.*, No. 3:14-cv-204-DJH, 2016 WL 9558953, at *2 (W.D. Ky. Oct. 31, 2016) (citing *Newberg on Class Actions* § 13:14 (5th ed. 2016)). This case has been pending since June 2023 (D.N. 1), and the parties have engaged in adversarial motion practice (*see* D.N. 14; D.N. 16; D.N. 19; D.N. 20; D.N. 23; D.N. 25; D.N. 26; D.N. 27; D.N. 36) and discovery (D.N. 49, PageID.859 ¶ 9). The settlement was reached following mediation with an experienced mediator (*id.* ¶ 10) and was reviewed by an independent fiduciary. (D.N. 71-4) Thus, these factors also weigh in favor of approval, particularly because "courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).

3. **Adequacy of Relief**

   a. **Costs, Risks, and Delay of Trial and Appeal/Complexity, Expense, and Likely Duration of the Litigation/Likelihood of Success on the Merits**

The parties have already invested significant time and money in this litigation, and some of Plaintiffs' claims have already been dismissed. (*See* D.N. 37) Proceeding to trial would entail further risk and expense, with the outcome uncertain—Plaintiffs' claims would still need to clear the certification stage and a potential motion for summary judgment, while Defendants could face greater liability if the case were to proceed. (*See* D.N. 49, PageID.859 ¶ 7; D.N. 71-2, PageID.1090–91) Especially because ERISA litigation is "highly specialized and complex" and fully litigating an ERISA claim "presents substantial risks," this factor weighs in favor of approval. *Chavez v. Falcon Transp. Co.*, No. 4:19-cv-958, 2025 WL 959219, at *8 (N.D. Ohio Mar. 31, 2025) (citation omitted).

   b. **Method of Distribution**

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Newberg on Class Actions* § 13:53. This factor favors approval when class members are not required to "submit claim forms or other documents to participate in the recovery." *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 663 (N. D. Ohio 2023). The distribution process here imposes no such requirement; instead, class members will "receive any payment for which [they] are eligible automatically in [their] Plan account . . . or by check." (D.N. 71-5, PageID.1114; *see also* D.N. 71-2, PageID.1091–92) The settlement is also non-reversionary, meaning that no portion of the $625,000 that Defendants are paying to settle will be returned to them. (*See* D.N. 49-1, PageID.884 § 5.6) Instead, any leftover funds will be used to pay plan expenses that would

5

otherwise be charged to class members. (*Id.*) In short, there are no "red flag[s]" suggesting that the method of distribution is designed to prevent class members from receiving payment, *Newberg on Class Actions* § 13:53, and this factor likewise favors final approval.

### c.  Attorney Fees

The parties' agreement provides class counsel with one third of the settlement, or $208,333.33, as attorney fees, as well as litigation costs of $40,000. (D.N. 49-1, PageID.884 § 6.1; *see also* D.N. 68)  The Sixth Circuit recognizes two methods for calculating attorney fees: the lodestar method and the percentage-of-the-fund method. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016).  This Court "ha[s] the discretion to select the particular method of calculation but must articulate the 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'" *Id.* at 280 (internal quotations omitted) (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).  The percentage method is generally preferred in common-fund cases. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

The percentage-of-the-fund method is straightforward and consistent with the fee arrangement between Plaintiff and class counsel (*see* D.N. 68); it also "more accurately reflects the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516).  The Court will therefore apply the percentage-of-the-fund method in this case.

The Sixth Circuit has identified six factors relevant to the attorney-fee inquiry under either method of calculation:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

6

*Id.* (quoting *Moulton*, 581 F.3d at 352). These factors support approval of class counsel's requested fee here. First, the value of the benefit to class members is tangible: the settlement represents 11.1% of their claimed losses (D.N. 67, PageID.1014), which is in line with the percentage typically recovered in class-action suits. *See Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 966 (E.D. Mich. 2021) ("[T]he average recovery in class actions is seven (7%) to eleven (11%) percent of claimed damages." (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010))). Further, class counsel have extensive experience with this type of litigation and provided their services on a contingent basis. (D.N. 70, PageID.1050–56 ¶¶ 2–13, 17–21) The case is complex, and society has a strong "interest in ensuring that attorneys willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006).

Finally, the percentage sought is not unreasonable. The proposed fee award in this case represents approximately one third of the total settlement amount. (*See* D.N. 68) Fee awards of thirty-three percent are frequently approved in similar cases. *See Hawkins v. Cintas Corp.*, No. 1:19-cv-1062, 2025 WL 523909, at *3 (S.D. Ohio Feb. 18, 2025) (citation omitted). In light of this precedent and the factors listed above, the proposed fee award is reasonable.

### d. Other Agreements

The parties represent that the "Settlement Agreement and its exhibits constitute the entire agreement among the Parties to the Settlement Agreement and no representations, warranties, or inducements have been made to any party concerning the Settlement." (D.N. 49-1, PageID.895 § 14.20) Thus, this factor favors final approval.

### 4. Equitable Treatment of Class Members/Preferential Treatment of Named Plaintiffs

The settlement agreement provides for a $5,000 service award to each named plaintiff, for a total of $20,000. (*Id.*, PageID.884 § 6.1) Such payments generally "do[] not raise a red flag" in the settlement-approval inquiry "because the class representative[s] and class member[s] are not similarly situated in regard to . . . the incentive payment: the class representative[s] did extra work and took extra risk to earn that." *Newberg on Class Actions* § 13:56. Requests for incentive awards are nevertheless "scrutinized carefully" in light of the concern that such payments "may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)).

As noted in the Court's August 29 Order, the instant service awards raise concerns about the proportionality of the named plaintiffs' recovery compared to other class members. (D.N. 67, PageID.1016–17) But "considerable time" spent by a plaintiff in protecting the class's interests can justify a heightened service award. Here, class counsel represents that the named plaintiffs spent substantial time assisting with preparing the complaint and motion to dismiss and arriving at the final settlement. In particular, counsel report that the named plaintiffs have

> (1) reviewed the allegations in the Complaint and Amended Complaint bearing their names; (2) provided information to [his] firm in connection with the lawsuit; (3) communicated with [his] firm regarding the litigation and Settlement; (4) submitted Declarations for preliminary approval of the class action settlement motion; and (5) reviewed the Settlement Agreement in its entirety.

(D.N. 70, PageID.1059 ¶ 31) Class counsel also states that "Based on the time and assistance that named Plaintiffs have provided as class representatives, their initiative in pursing this action, and the risks that they assumed to their employment and careers, [he] believe[s] that the requested case contribution award is reasonable." (*Id.* ¶ 32) In light of counsel's representations regarding the

named plaintiffs' contributions, this factor favors final approval.[1]  *See Kimble v. Am. Home Warranty Corp.*, No. 23-10037, 2024 WL 3325705, at *4 (E.D. Mich. July 8, 2024) (approving service award based on counsel's representations that the named plaintiff "engaged actively in this litigation and during the mediation process . . . and her meticulous record-keeping was critical to the settlement").

### 5.    Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits" generally "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."  *Does*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).  This factor therefore also supports approval.

### B.    Certification for Settlement Purposes

The Court previously granted conditional certification for settlement purposes.  (D.N. 67, PageID.1024)  There is no indication that any of the factors supporting certification have changed since that ruling; thus, certification for settlement purposes remains appropriate.  *See* Fed. R. Civ. P. 23(a), (b)(3).

---

[1] Class counsel did not comply with the Court's directive to "provide specific documentation—in the manner of attorney time sheets of the time actually spent on the case by each recipient of an award."  (D.N. 67, PageID.1017 (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 311 (6th Cir. 2016)))  Because there were no objections to the settlement (D.N. 71-5, PageID.1109 ¶ 15), class counsel has provided other assurances of the named plaintiffs' contributions (*see* D.N. 70, PageID.1059 ¶ 31), and the service awards are fairly modest (*see* D.N. 49-1, PageID.884 § 6.1), the lack of better documentation will not prevent approval here.  *See Kimble v. Am. Home Warranty Corp.*, No. 23-10037, 2024 WL 3325705, at *1, *4 (E.D. Mich. July 8, 2024).  More thorough documentation of the class representatives' contributions is always preferred, however.  Under different circumstances, the failure to produce better documentation may prevent the Court from granting final approval.  *See Shane Grp., Inc.*, 825 F.3d at 311.

### C. Notice to Class Members

Rule 23 requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously approved the form and contents of the notice and its distribution via email and, if necessary, first-class mail. (D.N. 67, PageID.1022–24)

The claims administrator has attested that only ninety-two notices ultimately could not be delivered as of October 22, 2025. (D.N. 71-5, PageID.1108 ¶ 12) This means that only about 0.17% of the notices were undeliverable. (*Id.*) The Sixth Circuit has found the notice requirement satisfied even when the proportion of undelivered notices was significantly higher. *See Does*, 925 F.3d at 899 (approximately 12% of notices undeliverable). Thus, notice here was adequate. *See id.*

### D. Payment to Claims Administrator

Based on the affidavit submitted by Analytics Consulting representative Jeffrey Mitchell, the claims administrator appears to have performed its duties in accordance with the settlement agreement and the Court's prior order. (*See* D.N. 71-5)

### III.

In sum, the Court finds the parties' settlement to be fair, reasonable, and adequate. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Plaintiffs' unopposed motion for final approval (D.N. 71) is **GRANTED**.

(2) Plaintiffs' motion for attorney fees and costs (D.N. 68) is **GRANTED**.

(3) The Court adopts the defined terms in the Settlement Agreement.

(4)     The following class is certified for settlement purposes only:

All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a [Qualified Domestic Relations Order] who participated in the Plan at any time during the Class Period.

(5)     The Court confirms the appointment of Kenneth Dukes, Mark A. Gale, Christine Chavis, and David Fly as Class Representatives and the service awards of $5,000 to each, as set forth in the Settlement Agreement.

(6)     The Court confirms the appointment of Walcheske & Luzi, LLC and Paul Hershberg Law, PLLC as Class Counsel for the settlement class and approves their request for attorney fees of $208,333.33 and litigation costs of $40,047.07.

(7)     The Court finds that as of the date of this Order, each and every class member has waived and released claims as set forth in the Settlement Agreement and Notice of Settlement.

(8)     The Court finds that the settlement administrator Analytics Consulting, LLC is entitled to $29,550.

(9)     The Court finds that the independent fiduciary Arthur J. Gallagher & Co. is entitled to $15,000.

(10)    The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the settlement administrator to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement.

(11)    This matter is now **DISMISSED** with prejudice, **STRICKEN** from the Court's docket, and **CLOSED**. The Court retains jurisdiction to enforce the terms of the settlement, including the payment of the settlement fund.

December 15, 2025

**David J. Hale, Chief Judge**
**United States District Court**